## COLORADO YULE MARBLE CO. v. COLLINS.

### (Circuit Court of Appeals, Eighth Circuit. December 1, 1915.)

### No. 4226.

1. CONTRACTS ☞329—ANTICIPATORY BREACH—RIGHT OF ACTION FOR LOSS OF PROFITS.

Where one party to a contract clearly and unequivocally renounces the same, either when it is wholly executory or after part performance, a cause of action for loss of profits arises at once in favor of the other party.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1511, 1585–1588; Dec. Dig. ☞329.]

2. COURTS ☞366(1), 372(1)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

The federal courts accept the interpretation put by the courts of a state upon its own Constitution and statutes, but do not follow such courts as to the common law or questions of general jurisprudence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 956, 967, 979; Dec. Dig. ☞366(1), 372(1).]

3. CONTRACTS ☞313(2)—ANTICIPATORY BREACH—ACTS CONSTITUTING RENUNCIATION—QUESTION FOR JURY.

Plaintiff contracted to do certain building work for defendant, agreeing to commence at once and prosecute the work to completion with all possible dispatch, and to furnish a sufficiency of labor and skilled mechanics when it was possible to proceed, and defendant agreed to make payments on monthly estimates. During the second month of the work plaintiff was notified to stop, as a reorganization of defendant company was contemplated. Estimates were given, but no payments were made on account of the work done. *Held*, that whether such notice to stop work indefinitely constituted an absolute and unequivocal renunciation of the contract, such as to entitle plaintiff to maintain an action at once for the breach, was a question for the jury.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279; Dec. Dig. ☞313(2).]

4. TRIAL ☞266—INSTRUCTING JURY—STATEMENT THAT INSTRUCTION IS GIVEN BY REQUEST.

A statement by a judge to the jury that an instruction was given by request is not error, and especially where he added that he thought the instruction a fair statement of the law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 664–667; Dec. Dig. ☞266.]

5. APPEAL AND ERROR ☞760(1)—REVIEW—QUESTIONS CONSIDERED.

When a plaintiff in error fails to point out in the argument the page of the transcript on which an error appears, such error will not ordinarily be considered by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3095; Dec. Dig. ☞760(1).]

Adams, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Page Morris, Judge.

Action at law by George J. S. Collins against the Colorado Yule Marble Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Francis A. Brogan, of Omaha, Neb., for plaintiff in error.

Arthur R. Wells, of Omaha, Neb. (John F. Stout and Halleck F. Rose, both of Omaha, Neb., on the brief), for defendant in error.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. The plaintiff in error, the Colorado Yule Marble Company, hereafter called the defendant, is a corporation organized under the laws of Colorado. The Nebraska Mausoleum Company, of Omaha, Neb., had let to the Colorado Yule Marble Company as architects, marble dealers, etc., a contract to erect a 600-crypt mausoleum with chapel at West Lawn Cemetery at Omaha. The Colorado Yule Marble Company sublet a portion of the contract to the defendant in error, George J. S. Collins, hereafter called the plaintiff, for $40,000. The latter contract was in writing, and contained, among others, the following stipulations:

"The said Collins hereby agrees to commence the work at once and prosecute the same to complete finish to the entire satisfaction of the said C. Y. M. Co. with all possible dispatch and under the direction of the superintendent in charge, and to furnish a full sufficiency of labor and skilled mechanics at all times when it is possible to proceed. The said Collins further agrees that all materials used shall be the best quality of their respective kinds, that all work performed shall be executed in the most skillful and workmanlike manner, and the said Collins further covenants and agrees that the bond furnished in amount $20,000 shall be security for the satisfactory performance and fulfillment of the contract. * * * Payments to be made monthly upon estimates by the aforesaid superintendent of the said C. Y. M. Co., provided, however, that all work up to the estimated and claimed amount is satisfactory to the said C. Y. M. Co."

The contract was signed August 24, 1912. That was Saturday. No bond was ever given as provided in the contract, except as hereafter explained, but on Monday, August 26, 1912, Mr. Collins commenced work under the contract and worked steadily until October 7, 1912. On Saturday, October 5th, Mr. Savage, an agent of the defendant, told Mr. Collins to quit work; that they were trying to reorganize both the Mausoleum Company and the Marble Company. Mr. Collins said they were then in the middle of one of the bays, and he thought it advisable to finish that work before he stopped, and the completion of that took until Monday, October 7th. Up to that time the total work done was of the value of $1,085.37, which was covered by two certificates of the superintendent of the Marble Company, the first for $835.37 and the second for the balance. No part of these estimates has ever been paid. On November 25, 1912, plaintiff commenced suit in the district court of Douglas county, Neb. His petition was in two counts. In the first he sought to recover $1,085.38. In the second he sought to recover $6,000 for profits he would have made if allowed to go on with the work, and if the same was paid for under the contract. On the same day he secured an attachment, which was served by garnishing several parties. Upon application of defendant the case was removed to the United States District Court for Nebraska, and there defendant answered. The case was tried to a jury, who found for plaintiff in the sum of $7,172.10, and judgment

was rendered therefor. Thereupon the defendant sued out a writ of error to this court.

In its argument the Marble Company says:

"In its assignment of errors (page 85), on bringing this case to this court for review, the Marble Company relies upon the following propositions, which are indicated and preserved in various ways in the record:

"I. The action was prematurely brought for the recovery of the total profits on the contract, for the reason that the evidence wholly fails to show a total, anticipatory breach of the contract, such as would justify the bringing of such an action.

"II. Before the plaintiff could bring an action for such total breach, it would be necessary for him to have tendered full performance on his part, including the giving of the bond, which, on his own showing, had been only temporarily waived, but not entirely eliminated from the agreement.

"III. The plaintiff, having suspended work at the request of the defendant for the purpose of enabling some difficulties to be adjusted, could not thereafter put the defendant in default as for a breach of the contract, without giving notice that unless he was permitted to resume the work he would treat his prevention as a breach.

"IV. Error in the giving of instructions, even on the theory of the trial court. These will be pointed out in detail."

[1] As bearing upon the first three of these points it should be borne in mind that this was a partially executed contract, and a number of the authorities agree that there is a difference between contracts wholly executory and those executed in whole or in part. But in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, the Supreme Court after a most exhaustive consideration of both English and American authorities held substantially that there was no difference between purely executory and partly executed contracts, and that where one party to a contract clearly and positively renounced his contract before any part of it was executed a cause of action for the loss of profits accrued at once to the other party. That opinion is quite conclusive, so far as it goes, upon this court, as it was upon the District Court.

In Elliott on Contracts it is said:

"Sec. 2028. *Renunciation — Anticipatory Breach — Controlling American Rule.*—The American courts, with almost practical unanimity, adopt the rule of the English courts and hold that an unqualified and positive refusal to perform a contract before performance is due may be regarded as a complete breach of the contract, where the renunciation goes to the whole contract, and the injured party may bring his action at once."

This is supported in a note by a vast number of authorities. There has been some confusion on this subject by reason of the use of the term "rescission" in connection therewith. If there be a complete rescission of a partially executed contract there is no cause of action on the contract, but the only remedy of the party who has not been in default is a suit upon a quantum meruit. But the confusion between a breach of contract and a mutual rescission results in a confusion as to the remedy.

[2] It is true that in section 2029 of Elliott on Contracts it is said that Massachusetts, North Dakota, Maine, and Nebraska have in varying measure dissented from the English and American doctrine, and it is also true that this contract was a Nebraska contract and was there-

to be performed.˙ But this can be of no controlling weight with us. This was a case not arising under the statutes of Nebraska, but under the common law and the rules of general jurisprudence. The federal courts accept the interpretation put by the courts of a state upon its own Constitution and statutes, but do not follow it as to the common law or general jurisprudence. Baltimore & Ohio Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Gardner v. Michigan Central Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; Chicago, Milwaukee & St. Paul Ry. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688. If the defendant wanted the benefit of the exceptional rule adopted in Nebraska, its remedy was to not remove the case from the state court, where it was pending, to the federal court, where it now is.

[3] The first question to be determined in this case in the District Court was whether the defendant renounced the contract before this suit was brought by positive, distinct, unequivocal, unconditional, and absolute conduct. Here it must be borne in mind that the question is not, did the defendant so renounce the enterprise? but, did it so renounce the contract? The defendant cites Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984. But that case simply held that, if what it was claimed was a renunciation was not of the positive, distinct, unequivocal, unconditional, and absolute character necessary to constitute a renunciation in law, no action would lie.

In this case the plaintiff had agreed to commence the work at once and prosecute the same to completion with all possible dispatch, and to furnish a full sufficiency of labor and skilled mechanics at all times when it was possible to proceed. The company agreed to make payments monthly. No payment was made on October 1st and November 1st, and no definite assurance seems to have been given when these payments were to be made, but on October 5th the defendant ordered the plaintiff to violate the provisions of the contract that he would prosecute the work to completion with all possible dispatch. With his force organized and at work, it was a violation of the most important part of the contract, ordering him to cease work for an indefinite time. He did as asked, and then brought suit. Manifestly it was for the jury to say whether this was a positive, distinct, unequivocal, unconditional, and absolute renunciation of the contract, such as to amount to a renunciation in law, and the only question is whether the case was submitted under proper instructions to the jury.

Defendant complains of the failure to give a bond as provided in the contract. In his reply the plaintiff says the giving of the bond was waived. The evidence shows that plaintiff with reasonable promptness applied for a surety bond to agents of a surety company. They investigated the financial standing of the Mausoleum Company and the defendant, and this resulted in delay, and no bond was in fact signed until after this suit was brought, and that was for the purpose of securing the performance of a proposed substituted contract. The contract in question was signed by defendant, by C. J. Field, who acted substantially in all matters as the defendant's general manager. Mr. L. M. Savage and Maj. C. F. Cramer were representatives of the de-

230 F.—6

fendant, conducting its Omaha office. The plaintiff testified that he mentioned the subject in the office, in the presence of Mr. Savage and Maj. Cramer; that—

"I told Mr. Savage and Maj. Cramer that the bonding company had looked up their financial resources, and was not satisfied with them, and they told me to go ahead without a bond, both Maj. Cramer and Mr. Savage. This was a week or so after the contract had been commenced."

He also testified to a subsequent conversation with Mr. Field, in which the latter said that:

"He knew the bond hadn't been given, and that they were not making any kicks about it at all."

It is true that the defendant's witnesses testified that the waiver, if any, was simply temporary; but it is clear that this was a question for the jury, and the question of whether there was a temporary or permanent waiver of the ,bond was submitted by the court to the jury, and no sound criticism of the instruction on that subject is made or argued.

[4] We have already indicated that we regard the evidence sufficient to go to the jury on the question of whether the defendant by positive, distinct, unequivocal, unconditional acts renounced the contract with the plaintiff. The court told the jury:

"If in this case the defendant failed to pay the amount already due under this contract, and directed the plaintiff to quit work (now up to that point I do not suppose there will be any contention that the evidence shows anything else; in other words, that the defendant had failed to pay the amount already due under the contract, and had directed the plaintiff to quit work, so you will not have to bother much about that), and if thereafter—now listen to this—if thereafter its conduct showed (you have had testimony here as to what was done between these parties) that it could not make the payments required by the contract unless the Mausoleum Company paid it, and that, without reference to whether or not the plaintiff gave the bond required of him by the contract, it did not intend that the plaintiff should continue the work unless the Mausoleum Company should be reorganized and put in condition to make its payments to the defendant, so that the defendant could make its payments as provided by the contract to the plaintiff, and if at that time (I mean by that up to the time of the bringing of this suit) the Mausoleum Company was not in such condition, and there was no reasonable certainty that it could within a reasonable time be put in such condition (as I have said before, this contractor could not be required to wait for an indefinite period, for a period about which there would be no certainty of its termination, or whether that period would ever be terminated)— Let me read that over again: And if at that time, that is, up to the time of the bringing of this suit, as shown by the negotiations and conduct of these parties, the Mausoleum Company was not in such condition, and there was no reasonable certainty that it could within a reasonable time be put in such condition, and if the plaintiff, Mr. Collins here, was ready, able, and willing to completely perform his part of the contract, then I think you would be justified in finding that the plaintiff was, without fault on his part, wrongfully prevented by defendant from performing the contract, or that the conduct of the defendant excused him for his nonperformance, and that he had a right to regard the contract as broken, and to immediately sue for damages for a breach of contract. And I have already stated to you what would be the measure of those damages; the amount already earned—no dispute about that—and in addition the loss of profits, whatever they might have been, not, however, in this case, over $6,000. It is true that these proofs might indicate a greater profit on the contract if the plaintiff had been allowed to complete it, greater than

$6,000; but they have claimed only that much in their petition, and you cannot find for any more, although, if you believe that the amount of profit was really less, you can find for less. Although I don't know of any proof, certainly none has been offered by the defendant here in regard to that—no proof except that produced by the plaintiff.

"Now let us go over that again and see what you have got to find. If the defendant failed to pay the amount already due under the contract (I don't suppose there is any doubt about that), and directed the plaintiff to quit work (I don't suppose there is any doubt about that; now we come to that part about which there may be some question, but I am not expressing any opinion on that subject), and if thereafter its conduct (that is, the defendant's conduct) showed that it could not make the payments required by the contract, that it could not make them itself, and that, without reference to whether or not the plaintiff gave the bond required by him under the contract (in other words, if their conduct was such—if the defendant's conduct was such—as to show that it was not defendant's intention to rely upon the giving of the bond), and that it did not intend that the plaintiff should continue the work unless the Mausoleum Company should be reorganized and put in condition to make its payments to the defendant, so that the defendant could make its payments as provided by the contract to the plaintiff, and if at that time (that is, up to the time of the bringing of this suit) this Mausoleum Company was not in such condition (that is, in condition to make its payments to the defendant, so that then it could make its payments to the plaintiff), and there was no reasonable certainty that it could within a reasonable time be put in such condition, and if the plaintiff was ready, able, and willing to completely perform his part of the contract. Now those are the things that you must find in favor of the plaintiff before you can find a verdict for the loss of profits on this contract, and upon these questions the burden of proof is upon the plaintiff. This plaintiff must satisfy you of the existence of these conditions by a fair preponderance of the testimony. And what we mean by a fair preponderance of the testimony is the fairly greater weight of the testimony; that is, the weight of the testimony must be in favor of the plaintiff on the question. I think you would be justified—if you found all these facts in favor of the plaintiff, you would be justified—in finding that the plaintiff was without fault on his part wrongfully prevented by defendant from performing the contract, or that the conduct of the defendant excused him for his nonperformance, and that he had the right to regard the contract as broken and to immediately sue for the damages for breach of it.

"Now, I have been asked to give an instruction here that if the work under the contract was suspended by mutual consent, or by the acquiescence and consent of the plaintiff, to enable satisfactory arrangements to be made to provide payment of payments due to plaintiff as work progressed, then it became the duty of the plaintiff to notify defendant that he would no longer consent to a suspension for that purpose, before he would be entitled to commence suit for the entire profits under his contract. I think that is a fair statement of the law. In other words, if the plaintiff had consented, either by word or conduct, as shown by this testimony, or acquiesced in that suspension to enable this arrangement to be made, why then, before he could declare a full breach of this contract, he must notify the parties. But if without such consent or acquiescence the conditions existed which I have enumerated here in the former instructions which I gave you, I think you would be justified in finding that he had been prevented from performing this contract, or that the defendant's conduct was such as excused him for this nonperformance, and then he could bring suit at once and recover his damages. * * *

"Juror Brugger: I don't exactly understand your last instruction as to notice to be given by plaintiff.

"The Court: Well, I said, if the words or conduct of this plaintiff here indicated that he consented to or acquiesced in the suspension of that work for the reasons assigned by the defendant, then before he could bring this action he should give notice that he no longer consented. If he didn't so acquiesce or consent, but simply stopped work because they told him to, did not

either by conduct or by words acquiesce or consent to this suspension, but simply was obeying their directions, you understand, and if the conditions existed which I have enumerated, and he was ready and willing and able at all times to perform this contract, why then the consequences would result from those conditions which I have indicated. Does that answer your question?

"Juror Brugger: Then the commencing of the action is not considered as notice?

"The Court: No; he would have to give that notice beforehand. And remember, there must be an acquiescence or consent positively—acquiescence or consent by word or conduct in the suspension of that work, you understand, and a consent that they should go on and make these negotiations. Unless he did that, why then these other conditions are the ones which would give him the right of action."

The court did not state who asked the charge as to notice; but, assuming that its contents indicated it was the defendant, it complains that the court weakened this part of the charge by saying, "Now, I have been asked to give an instruction," etc.; but the court immediately added, "I think that is a fair statement of the law." There is ordinarily no objection to the court stating that a particular instruction is given at the request of the plaintiff or the defendant, and where, as here, he stated that that was a fair statement of the law, there is certainly no room for just criticism.

[5] Complaint is made that interest was allowed on the whole sum of $1,085.37 from October 7th. It is claimed the contract provided for 15 per cent. of the money being retained until the completion of the contract, and that interest would be allowed upon this 15 per cent. for a little less than six months erroneously under this instruction. This would involve an error of a little less than 60 cents. We have read the contract, and find no provision for retaining 15 per cent., and plaintiff in error has failed to point out where the provision is in the contract. In Illinois Cent. R. Co. v. Nelson, 212 Fed. 69, 128 C. C. A. 525, and the cases there cited, we held that, when a plaintiff in error failed to point out in the argument the page of the transcript on which an error appeared, such error would not ordinarily be considered by this court.

There is no error apparent, and the judgment is affirmed.

ADAMS, Circuit Judge, dissents.