**MONTE VISTA FARMERS' CO-OP. PRODUCE CO. v. BEMIS BRO. BAG CO.**

(Circuit Court of Appeals, Eighth Circuit. November 19, 1923.)

No. 6365.

1. **Sales** ⬥32—Definite agreement by telegraphic correspondence constitutes binding contract.

Where telegrams exchanged between the parties disclose a definite agreement on all the terms of a sale and purchase, they constitute a binding contract.

2. **Sales** ⬥150(1)—Action of seller held repudiation of the contract.

Where, after definite agreement by an exchange of telegrams on the terms of a contract of sale, plaintiff, as seller, inclosed in a letter to defendant, as buyer, a written contract "confirming sale," for execution by

defendant, which materially changed the terms of sale as expressed in the telegrams, and plaintiff insisted that it was in confirmation, its action was a repudiation of the contract made by the telegrams.

3. Contracts ⟷313(1)—Repudiation of contract by one party justifies rescission by the other.

Where the conduct of one party indicates that it repudiates its contract, the other party is entitled to treat it as rescinded.

4. Sales ⟷92—Agreement to rescind may be inferred from acts and declarations of parties.

A written contract of sale may be rescinded by parol, and an agreement to rescind may be inferred from the acts and declarations of the parties.

5. Estoppel ⟷63—Seller, after repudiation of contract, held estopped to insist that it is in force.

A seller, in a contract made by exchange of telegrams, which insisted that a written contract presented for buyer's signature was in confirmation of the contract made, though it differed materially in its terms, is estopped to abandon such claim and sue on the telegraphic contract after the buyer, in reliance on such contention, has treated it as rescinded and bought elsewhere.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action at law by the Bemis Bro. Bag Company against the Monte Vista Farmers' Co-operative Produce Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

Benjamin Griffith, of Denver, Colo. (Fred S. Caldwell, of Monte Vista, Colo., on the brief), for plaintiff in error.

George L. Nye, of Denver, Colo. (John H. Fry and Robert H. Dunlap, both of Denver, Colo., on the brief), for defendant in error.

Before STONE and LEWIS, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge.  Charging breach of an executory contract for the sale and purchase of merchandise the Bag Company (plaintiff below) recovered verdict and judgment for $3287.00, as its damages. The complaint shows that the contract relied on for sale and purchase of 250,000 new potato bags consisted in written correspondence between the parties. The first communication set out in the complaint is a letter of November 24, 1920, from the Produce Company inquiring at what price the Bag Co. would sell 8 oz. burlap bags cut 36x48, and printed, to be delivered in August, 1921. To this the Bag Co. replied by telegram from Omaha on November 29th:

"Refer your recent letter addressed to our Denver representative we can furnish you new potato bags printed freight paid same quality your inquiry price eighty-nine eighty per thousand net this price subject immediate wire acceptance and our confirmation."

The acceptance of this offer was, as alleged, by telegram from the Produce Co. on November 30, 1920, as follows:

"Book five minimum cars fifty thousand each new eight ounce bags thirty-six forty-eight, printed, two delivered August fifteenth to thirtieth, three

September first to fifteenth, nineteen twenty-one, all at eighty-nine eighty per thousand f. o. b. Monte Vista, payment sight draft with bill of lading attached."

It is alleged that the Bag Co. confirmed the sale by its telegram of December first to the Produce Co. at Monte Vista, Colorado, as follows:

"Message received. We confirm sale five cars new potato bags."

It is then alleged that the Bag Co. was ready and willing at all times to perform in accordance with the terms of the contract but that the Produce Co. repudiated the contract and refused to take the bags.

[1] Because of a letter and its enclosures, hereinafter set out, written and sent to the Produce Co. by the Bag Co. on December 1st, and alleged to have been done contemporaneously with the sending of the telegram of that date, it is contended by plaintiff in error that no contract, as exhibited by the telegrams set up in the complaint, was concluded and entered into between the parties. We think it sufficient to say we consider the contention unsound. The three telegrams read together disclose a definite agreement on all of the terms of sale and purchase. The plaintiff in error, if it had chosen to do so, could have held the defendant in error as bound; and where one party is bound in a bilateral contract it is binding on both.

[2] But conceding that this correspondence constituted a contract between the parties on the terms expressed in all of the telegrams, plaintiff in error further contends that it set up separately in its answer facts arising subsequently which make out two good defenses, rescission and estoppel, both of which were held bad on demurrer. That action of the court is assigned as error. As to the defense of rescission, the answer alleges that the Bag Co. renounced the contract sued on, and thereupon and on account of its renunciation the Produce Co. rescinded the contract and was not thereafter bound. Again, the facts on which this defense is based consisted of correspondence between the parties, which is set out in the answer. That correspondence is this: On December 1, 1920, the Bag Co. wrote and mailed to the Produce Co. a letter (alleged to have been done contemporaneously with sending the telegram of that date), as follows:

"Omaha, Neb., Dec. 1, 1920.

"The Monte Vista Farmers' Co-operative Produce Co., Monte Vista, Colo.— Gentlemen: We have your telegram of the 30th:

" 'Book five minimum cars fifty thousand each new eight ounce bags cut thirty six, forty eight, printed, two delivered August fifteenth to thirtieth, three delivered September first to fifteenth, nineteen twenty one, all at eighty nine eighty per thousand f. o. b. Monte Vista, payment sight draft with bill of lading attached.'

"We confirm our telegram:

" 'Message received. We confirm sale five cars new potato bags.'

"We are enclosing contract in duplicate confirming sale. Please attach signature to duplicate copy and return promptly.

"Please note that we have entered the contract for July-August shipment. We have specified this shipment so in case you desire two cars at Monte Vista on August 15th, we figure they should be shipped the latter part of July. If the balance is wanted at Monte Vista by Sept. 15th, they could be shipped by August 15th."

The duplicate contract enclosed in the letter reads this way:

"Contract No. 411.   (In Duplicate.)

"Dec. 1, 1920.

"Bemis Bro. Bag Co., Omaha, Neb., has sold to the Monte Vista Farmers Co-operative Produce Co., Monte Vista, Colo. 250,000—36" 8 oz. burlap bags x 48" selvage top—$89.80 per 1000 (printed).

"Time of shipment July-August 1921.

"Terms net, draft attached to bill of lading f. o. b. cars Omaha, less carload freight to Monte Vista, Colo. Any change in freight, or in tariff duties, to be for buyer's account. Deliveries are subject to delay or cancellation on account of strikes, fires, marine disasters, or causes beyond seller's control. Any change in cuts of bags from sizes specified, or any increase or decrease in the quantities as specified, is to result in a proportionate increase or decrease, as the case may be, of the total number of bags due on this contract. No verbal statement or trade custom can alter this contract.

"Bemis Bro. Bag Co.

"[Signed]   W. J. Monaghan.

"................

"..............."

It will be observed that this contract materially changed the terms of sale and purchase as expressed in the telegrams—in dates of delivery, that shipments should be f. o. b. cars Omaha instead of Monte Vista, and placed on the buyer the risk of changes in freight rates; and the letter said that the contract which it enclosed (not the telegram of December 1st) *confirmed* the sale. This put the Produce Co. in a dilemma. If the Bag Co.'s telegram of December 1st confirmed the sale, it was the sale made by the contract set up in the complaint, expressed in the telegrams of November 29th and 30th; if the written contract enclosed in the letter of December 1st confirmed the sale, then it was a sale on terms materially different from that expressed in the telegrams, and was a sale on the terms expressed in the written contract, which the Produce Co. was required to sign and return. And so the Produce Co., after receiving this written contract, represented by the letter of December 1st to be in confirmation of the sale, sent a telegram to the Bag Co. on December 8th as follows:

"We decline confirmation contract. Cancel order for potato bags. Letter follows."

The Bag Co. wired back on December 9th that it could not accept cancellation. It wrote a letter that day to the same effect, and expressed its surprise on receiving the telegram of the 8th, but it said nothing in either telegram or letter about the written contract. On December 10th the Produce Co. wrote the Bag Co. as follows:

"December 10, 1920.

"Bemis Bro. Bag Company, Omaha, Nebraska—Gentlemen: Your favor of the 1st inst. confirming certain telegrams between us and enclosing your contract No. 411 in duplicate for execution on our part in final confirmation of an order for 250,000 8" Burlap Bags, was duly received. Under date of the 8th inst. we wired you as follows: 'We decline confirmation contract. Cancel order for potato bags. Letter follows.' Under date of December 9th, you answered our wire as follows: 'Message received. While we await receipt letter of explanation cannot accept cancellation. Have already arranged for material to cover sale and we will fill our part of contract. Expect you to do likewise.' Please be advised that no final contract was completed between us for the very apparent reason that as above stated, your contract form No.

411, which you submitted for our execution in final consummation of our agreement was never accepted by us and on the contrary we advised in our wire of the 8th inst. and hereby confirm, we expressly rejected the same."

On December 13th the Bag Co. wrote the Produce Co., copying into its letter the three telegrams set out in the complaint, and insisted that they showed that a contract had been made which bound the Produce Co. to take the bags, but it closed that letter with this:

"So we trust you will attach your signature to duplicate of contract and return to us promptly."

Still the Produce Co. was left in doubt whether, if it stood upon the telegrams of November 29th, 30th and December 1st, it would get the bags or the privilege of bringing a law suit. It was not asked to change or modify a contract that had been made, leaving it in full force if suggested changes were not agreed to. It was notified that the written contract was in confirmation of the previous contract; and, by implication, that this confirmation was given pursuant to the Bag Co.'s reserved right in its telegram of November 29th. We think the above excerpt from the letter of December 13th and the letter of December 1st, with enclosures, were evidentiary facts tending to show that it was not the intention of the Bag Co. at that time to comply with the contract sued on. Once more the Produce Co. stated the situation. On December 23d it wrote this letter to the Bag Co.:

"December 23, 1920.

"Bemis Bro. Bag Company, Omaha, Nebraska—Gentlemen: Referring to your favors of the 13th and 15th inst. we note particularly the last part of your letter of the 13th inst., which concludes as follows: 'So we trust you will attach your signature to duplicate of contract and return to us promptly.' We understand this to be in accordance with your previous contention to the effect that a contract for the purchase of burlap bags by us from you was consummated upon terms, and provisions set forth in this said contract form No. 411, previously submitted, in duplicate, and to which you are asking that we now attach our signature. Our contention is that no such contract was ever finally consummated between us and as previously advised we decline to make any such contract or agreement with you and therefore must refuse to comply with your request in the matter of attaching our signature to said contract as formally expressed in your prepared form No. 411."

[3, 4] This, so far as shown by the pleadings, closed the correspondence. The Bag Co. never withdrew its notification that the written contract was its confirmation, nor its demands, twice made, that the Produce Co. sign and return the written contract. These facts, we believe, would have supported a finding that the contract by which the Bag Co. proposed to be bound and which it intended to perform was expressed in the written contract enclosed in the letter of December 1st, and not the contract sued on. Its insistence that the Produce Co. execute another and different contract covering the same subject matter was inconsistent with an intention of performing the prior contract. Where one of the parties is guilty of conduct indicating that it repudiates its contract, the other is entitled to treat the contract as rescinded and no longer binding upon it. The intention of the guilty party to that end, however, must be clear. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Colorado Yule Marble Co. v. Collins, 230 Fed. 78, 144 C. C. A. 376. Rescission requires mutual assent, but assent may

be inferred from conduct and circumstances, as well as from words. Florence Mining Co. v. Brown, 124 U. S. 385, 390, 8 Sup. Ct. 531, 31 L. Ed. 424; Williston on Contracts, Vol. 3, §§ 1302, 1826. In Mark v. Stuart-Howland Co., 226 Mass. 35, 115 N. E. 42, 2 A. L. R. 678 it is said:

"Where the defense rests on a rescission or mutual abandonment of a contract, the issue is whether the contract has ceased to have legal existence or has been terminated by reason of events occurring subsequent to the inception of the contract. * * * A contract may be abandoned by conduct as well as by words."

And in Chouteau v. Jupiter Iron-Works, 94 Mo. 388, 7 S. W. 467:

"There can be no doubt but a written contract may be rescinded * * * by parol. It is not necessary to show an express agreement to that effect, but the agreement to rescind may be inferred from the acts and declarations of the parties."

We think the facts pleaded were sufficient to sustain the conclusion that the contract sued on had been rescinded, and thus presented an issue for the jury; and therefore it was error to sustain the demurrer to that defense.

[5] As to the defense of estoppel, the same facts disclosed by the correspondence, beginning with the letter of December 1, 1920, are relied upon; and it is alleged that the defendant relying upon the statements and representations of the plaintiff as to what the plaintiff's confirmation was, and believing said written contract to be plaintiff's confirmation, as it was repeatedly represented to be such by plaintiff, withdrew from the transactions and negotiations disclosed by the telegrams and thereupon purchased the burlap bags which it needed from another manufacturer. If the Bag Company's conduct reasonably caused the defendant to believe that the former had abandoned the prior contract or did not intend to comply with it, the defendant was then entitled, if it so desired, to also disregard it, Anvil Mining Co. v. Humble, 153 U. S. 540, 551, 552, 14 Sup. Ct. 876, 38 L. Ed. 814; and the plaintiff could not thereafter be heard to say that it was still in force, to the detriment of the defendant. Equitable estoppel—

"consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. When a party unjustly contrives to put another in a dilemma, and to subject him to necessity and distress and he acts one way, it is not for the wrongdoer to insist that he should have acted another way." 21 C. J. 1114.

"The vital principle [of equitable estoppel] is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice." Dickerson v. Colgrove, 100 U. S. 578, 580 (25 L. Ed. 618).

We think this defense also raised an issue for the jury.

Reversed with direction to vacate the judgment, to set aside the orders sustaining the demurrer and to overrule the demurrer to both defenses.