No. 14392.

United States Court of Appeals,
Eighth Circuit.

Oct. 26, 1951.

Rehearing Denied Nov. 14, 1951.

Lancie L. Watts and Paul Barnett, Kansas City, Mo., for appellant.

W. Arnold Brannock, Thomas D. Circle, Arthur C. Popham and Sam Mandell, Kansas City, Mo., for appellee.

Before SANBORN, THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Action for damages for breach of contract. A trial by the court without a jury resulted in a judgment for plaintiff from which this appeal was taken. Appellant, the defendant below, contends (1) there was no contract between the parties, and (2) if there was a contract that plaintiff breached it, justifying cancellation by defendant.

In stating the facts we follow the rule that on appeal all facts and proper inferences to be drawn therefrom, most favorable to the findings of the court below, will be treated as established. The facts in this case will be related in accordance with that principle.

The United States Government determined to build a printing plant at Fort Leavenworth, Kansas. The United States Army Engineers prepared the specifications. The general contractor sublet the contract for electrical equipment to defendant. Defendant's contract required it to install a substation unit. Plaintiff's manufacturer's agent, an old established firm located at Kansas City, Missouri, which had acted for plaintiff on many previous occasions in securing contracts, communicated with defendant relative to obtaining the contract for the construction of the substation unit for plaintiff. The manufacturer's agent had theretofore obtained a copy of the Army Engineers' specifications. On August 2, 1949, defendant through its purchasing agent wrote plaintiff's agent advising that: "We have received the following modification to be incorporated in the unit substation for the above subject job." [The description of the modification is not

material and is deleted.] The letter continued: "Please submit your revised quotation as soon as possible." Plaintiff's agent by letter dated August 11, 1949, submitted, on behalf of plaintiff, a proposal to furnish the unit for $13,000.00. It appears that plaintiff's agent at the same time sent plaintiff a description of the unit taken from the Army Engineers' specifications and advised plaintiff's main office at Milwaukee, Wisconsin, of the proposal made to defendant. Plaintiff's Kansas City agent misinterpreted one feature of the specifications and assumed that the breakers called for were the stationary type instead of the more expensive draw-out type breakers. In the proposal of August 11th the breakers were described as Roller-Smith type breakers.[1] The name Roller-Smith was that of a large manufacturer whose catalogue was customarily kept in the files of electrical contractors such as plaintiff and defendant. A reference to a Roller-Smith catalogue would have promptly disclosed that the breakers described in the August 11th proposal were the stationary type. It is a reasonable assumption from the long experience of plaintiff's manufacturer's agent in contracting with the Government and Government contractors, the agent's possession of the Government engineers' specifications and the opening paragraph of defendant's letter of August 2, that plaintiff's agent knew at that time that the unit would have to meet the approval of the Army Engineer in charge. The detailed specifications and drawings for the unit prepared by the Army Engineers called for draw-out type breakers. Those specifications were not examined at plaintiff's office by plaintiff's Engineers at that time. If they had been it would have been apparent that they called for draw-out type breakers. Defendant's purchasing agent who received the letter was not an Engineer. He did not know and did not investigate to see whether the description of the breakers in plaintiff's letter of August 11 conformed to the Army Engineers' specifications and made no objection to the description of the breakers. Defendant's purchasing agent responded to plaintiff's August 11 letter on August 15, 1949, by delivering to plaintiff an "order" for the unit at the bid price of $13,000.00. This order rather vaguely described the unit but provided that it should be in accordance with the Army Engineers' specifications and that six drawings of the unit should be furnished for the Army Engineers' approval prior to shipment of the unit.[2] In response to defendant's order, plaintiff, by letter dated August 18, 1949, acknowledged defendant's order. This acknowledgment described the unit in technical terms and described the breakers precisely as they were described in plaintiff's proposal of August 11. It also stated that the unit was to be "in accordance with" the Army Engineers' specifications and that six copies of drawings of the unit would be furnished for the Engineers' approval prior to the shipment of the unit. When defendant's purchasing agent received the acknowledgment he again made no inquiry about or objection to the description of the breakers. It appears that he was content to rely upon the requirement that the final acceptance of all parts of the unit was con-

---

1. In order to afford an opportunity for comparison of this description with others, it is set out:

   "Secondary section No. 1—1—3000 ampere, 3 pole hand operated with shunt trip breaker, Roller-Smith type HD50
   *   *   *   *   *   *   *
   "Secondary section No. 2—1—1200 ampere, 3 pole breaker, Roller-Smith type BD50
   "2—500 ampere, 3 pole breakers, Roller-Smith type RS25
   "Secondary section No. 3—1—500 ampere, 3 pole breaker, Roller-Smith type RS 25
   "1—350 ampere ditto
   "1—225 ampere ditto"

2. The order was as follows:
   "Deliver to Evans Electrical Construction Co. 1-750 KVA Unit Substation complete W/15 KV double throw primary switch 3,000 A main breaker W/3-500A, 1-1200A, 1-350A, 1225A branch breakers.
   "Net price $13,000.00.
   "Above to be in accordance with Corps of Engineers, Omaha District, Specification Serial No. 25-066-49-230, paragraph 35-16.
   "Furnish 6 copies of drawings for Engineers approval prior to shipment.
   "All of above subject to Engineers approval.
                    "J. Fowler
              "Purchasing Agent"

ditioned upon the approval of the Army Engineers.

When plaintiff received the order from defendant it prepared designs for the unit and made drawings thereof. These were furnished to defendant about October 4, 1949. They showed stationary breakers. No criticism was made of the designs or drawings by defendant at that time.

Plaintiff's evidence was to the effect that the well-known custom in the industry was for these original drawings and designs to be treated as preliminary and subject to correction, and in the event anything was wrong with them that an opportunity be given to make the necessary correction. Plaintiff's president testified that he relied on this custom and that if plaintiff had been advised that draw-out breakers were required they could and would have been supplied and the contract carried out completely.

Defendant submitted these designs and drawings to the Army Engineer who by letter to the general contractor returned them "without action" because they showed stationary breakers while the specifications called for the draw-out type. The Army Engineer's letter was forwarded to defendant by the general contractor and was received by defendant on October 26, 1949. There is a dispute, which the trial court did not determine, as to whether defendant immediately advised plaintiff by telephone of this letter on October 26, as defendant's purchasing agent claims was done, or whether, as plaintiff's representatives assert, the first plaintiff heard of the letter was when defendant cancelled the order on November 7, 1949. On November 3, 1949, defendant ordered the unit from another company. November 7, 1949, defendant notified plaintiff by letter that it was cancelling plaintiff's order because the drawings were rejected by the Army Engineers. With that letter was enclosed a copy of the Army Engineer's letter.

The Army Engineer testified that the drawings could have been corrected and he knew of no reason why plaintiff could not have "redrawn the drawings" and put in the draw-out type breakers. That it was the usual practice when the Engineers send back drawings that they were corrected and resubmitted, and that if plaintiff had corrected and resubmitted them within thirty to ninety days, he probably would have accepted them. That there was nothing wrong with them except the incorrect description of the breakers.

The vice-president of the general contractor testified that if plaintiff had resubmitted corrected drawings within two or three weeks and they had been approved, the resubmission would not have materially delayed the construction of the plant.

Plaintiff's president testified that it would have taken a week or ten days to correct the drawings.

The defendant contends there was no contract because the description of the breakers contained in plaintiff's offer of August 11, and in plaintiff's acknowledgement of defendant's order, varied from the description of the breakers contained in the Army Engineers' specifications, and that therefore, since defendant's order was for a unit with breakers of the kind described by the Army Engineers' specifications, there was no meeting of the minds concerning the type of breakers to be used and consequently no contract. But that is not the situation portrayed by the facts. Plaintiff had before it the copy of the Army Engineers' specifications. It made an offer to defendant to furnish the unit for $13,000.00. Defendant accepted this offer with the proviso that the designs and drawings meet the approval of the Army Engineers. Plaintiff knew that the designs and drawings of the unit had to meet the approval of the Army Engineers. The situation at that stage was, simply stated, that the plaintiff had offered to furnish the unit, designed according to the Army Engineers' specifications, and defendant had accepted that offer, for the price of $13,000.-00. Plaintiff had incorrectly described one of the details, to wit, the type of the breakers, in its proposal. Defendant had not carefully described all of the integral parts of the unit in its order. But those were details which the parties themselves do not appear to have treated as important. The important thing was that the designs and drawings should meet the approval of the

Army Engineers, and plaintiff's offer was unequivocally accepted, subject to that condition. Then when plaintiff acknowledged defendant's order and again incorrectly described the breakers, the defendant paid no attention to the inaccuracy. True, as defendant contends, the mere silence of a party will not result in the making of a contract. But the contract had already been made and the contract was as stated: that plaintiff would furnish the unit at $13,-000.00, which would meet the approval of the Army Engineers.

■ The drawings were furnished and submitted to the Engineers. The Engineers found that the drawings called for the wrong type of breakers and immediately reported that fact, without disapproving the drawings. The court could have found, with adequate evidentiary support therefor, that it was the custom in the industry, known to the contracting parties and testified to by the Army Engineer, that the original drawings and designs of this type were usually treated as preliminary and subject to correction. And the court could also have found with adequate justification that this custom constituted a part of the contract. But instead of making such findings the court found that plaintiff should have been given a reasonable opportunity to comply with the specifications, that defendant had no right to cancel the contract without giving plaintiff that opportunity, and that defendant did not give plaintiff that opportunity. The substance of the findings the court made was to the same effect as if the specific findings relative to the custom and practice had been made. The evidence justified the trial court in concluding that even if the telephone conversation had occurred, still the renunciation of the order by defendant was not a reasonable compliance with defendant's responsibility to plaintiff to give plaintiff a reasonable opportunity to correct the drawings and secure their approval.

Defendant contends that it had a right to cancel the order because the presentation of the drawings and designs for a different type breaker than that specified by the Army Engineers' specifications effectively exhibited an intent on the part of plaintiff not to perform the contract and that plaintiff is estopped by its conduct from denying that it did not intend to comply with the contract. But that argument is in the face of and inconsistent with the evidence as to the custom and practice of permitting the correction of such drawings, the ampleness of the time for doing so, with plaintiff's evidence that it could and would have corrected the drawings had it known that they were not acceptable, and plaintiff's reliance on the custom that it would have an opportunity to correct any inaccuracies.

The facts in this case distinguish it from such cases as Monte Vista Farmers Co-op. Produce Co. v. Bemis Bros. Bag Co., 8 Cir., 294 F. 8, cited by defendant, wherein the facts justified the conclusion that the seller did not intend to comply with the contract.

The other points raised by defendant are determined by what has already been said.

The judgment should be and is affirmed.