In re SILVERMAN et al.

(District Court, W. D. Missouri, W. D. June 19, 1899.)

**1. BANKRUPTCY—PROVABLE DEBTS—BREACH OF CONTRACT OF EMPLOYMENT.**

Where a person employed by a mercantile firm for a year on a fixed salary is discharged, without fault on his part, by a trustee to whom the employers had made a trust deed for the benefit of their creditors, on their becoming insolvent, before the expiration of the year, such employé has an immediate right of action against the employers for the breach of contract, the measure of damages being the amount he would have received under the contract for the remainder of the year, less such amount as he will be able to earn during that time from other sources; and, upon the bankruptcy of the employers, his claim for such damages becomes a debt which, after liquidation, may be proved and allowed against the estate in bankruptcy.

**2. SAME—ESTIMATE OF EXPECTED EARNINGS.**

Where the contract stipulated that such employé, besides his salary, should receive a commission on all sales made in the business above $15,-000 annually, and he presents a claim in bankruptcy for commissions, to which he alleges he would have become entitled had the contract remained in force, the burden is on him to furnish the court substantial and reliable data on which to estimate his probable earnings; and, in the absence of any satisfactory evidence to show that the sales during the year would probably have exceeded $15,000, any estimate of expected commissions would be merely speculative, and cannot be allowed as a debt against the estate.

**3. SAME—PROOF OF DEBT—UNLIQUIDATED CLAIMS.**

Under Bankr. Act 1898, § 63b, a creditor who has a claim against a bankrupt for unliquidated damages should first make application to the court to direct the manner in which it shall be liquidated, and, when that is done, he may prove and file the claim with the referee for allowance.

In Bankruptcy. On review of decision of referee in bankruptcy disallowing claim of Nathan Rosenberg.

Karnes, New & Krauthoff, for creditor.

PHILIPS, District Judge. Nathan Rosenberg presented a claim against said estate for $1,200 for unliquidated damages growing out of a breach of contract. The referee having disallowed the claim, the controversy is before the court for review. The controversy grows out of substantially the following state of facts: The bankrupts, Silverman Bros., were engaged in mercantile business in Kansas City, Mo., and for the year prior to September 6, 1898, the claimant, Nathan Rosenberg, was in their employ on a salary of $15 per week. On September 6, 1898, Silverman Bros. executed the following instrument of writing:

"Kansas City, Mo., Sept. 6th, 1898.

"We, Silverman Bros., agree to pay Mr. Rosenberg $60.00 per month, and three per cent. for sales over $15,000.00, for one year, to manage our shoe department.

"[Signed]
Silverman Bros.,
"By S. Silverman."

Rosenberg claims to have accepted this contract, and entered upon its performance, and so continued until the 9th day of January, 1899. at which time Silverman Bros. made a deed of trust on their stock of goods in favor of their creditors, they being largely indebted, and

probably unable to proceed further as a "going concern." One Swift was named as trustee in the deed of trust, and under its provisions he took possession and control of the stock of goods on the 9th day of January, 1899, and discharged from the store the employés under Silverman Bros., including said Rosenberg. On the 18th day of January, 1899, proceedings in involuntary bankruptcy were instituted against Silverman Bros.; and, upon the application of petitioning creditors, said Swift was appointed receiver, and continued in possession thereof as such until the 2d day of February, 1899, when said Silverman Bros. were adjudged bankrupts; and, upon reference of the papers to the referee, creditors' meeting was had, and said Swift was duly elected trustee. The claim of Rosenberg is based upon the breach of the contract of employment, and the $1,200 claimed by him is made up of items of $60 per month to the end of the contract year, and of 3 per cent. commissions on estimated sales over and above $15,000. There can be no question but what if, on the 9th day of January, 1899, there was a breach of the contract between Silverman Bros. and Rosenberg by his discharge from their service, or by their voluntary act which rendered the performance of the contract on their part impossible, a cause of action at once arose in favor of Rosenberg against Silverman Bros. for damages; and it is equally clear that the subsequent adjudication of bankruptcy in February, 1899, did not put an end to the cause of action, as it was then an existing right, which the mere adjudication in bankruptcy could not destroy. So, the real question in this case is not whether an adjudication in bankruptcy against the employer would put an end to a contract with an employé, like the one in question, so that the discharge of the employé would be under the operation of the bankrupt law, and not by reason of the voluntary act of the employer, but it is whether or not the act of Silverman Bros. in making the deed of trust, and placing Swift in absolute charge of the store and its business, whereby Rosenberg was displaced as manager and employé, did not constitute a breach of the contract, and create a subsisting cause of action, three weeks before the adjudication in bankruptcy. While the memorandum of contract was signed only by Silverman Bros., yet, when Rosenberg accepted and entered upon the performance thereof, and so continued until he was discharged, that was sufficient to make it a mutual contract, and as such binding upon both parties. As said by Wagner, J., in Lewis v. Insurance Co., 61 Mo. 538:

"It very frequently happens that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be applied; as, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract, will be necessarily implied."

The insolvency of Silverman Bros., and their inability to proceed with their business, whereby Rosenberg was thrown out of employment, constitutes no defense to an action by the employé for a breach

of the contract. 2 Pars. Cont. 672; Worsley v. Wood, 6 Term R. 718; Harmony v. Bingham, 12 N. Y. 99; Tompkins v. Dudley, 25 N. Y. 272; White v. Mann, 26 Me. 361; Lewis v. Insurance Co., 61 Mo 534.

On the discharge of Rosenberg without his fault or consent, a cause of action at once arose in his favor against Silverman Bros. He would not have to wait until the expiration of the year covering the term of his employment before he could institute the action. In such action he would be entitled to recover the amount that would have been due him if he had continued to work for Silverman Bros. under the contract from the date of his discharge until the expiration of the contract, after allowing credit for anything which he may have earned from services rendered to others, or under other contracts, after allowing further credit for what the court or jury hearing the case may believe from the facts and circumstances in evidence he will be able to earn between the time of trial and the termination of the year. Boland v. Quarry Co., 127 Mo. 520, 30 S. W. 151.

The evidence in this case shows that the claimant was paid his monthly wages up to the 9th day of January, 1899, when the trustee discharged him. The evidence further tends to show that he was thereafter for a few days employed by the trustee in and about the store in taking an inventory, and that shortly thereafter he earned about $15 in some other work that he had undertaken. His testimony further discloses the fact that he was at the time of giving his testimony before the referee employed by some other party on commissions to be earned by him. Taking into consideration, therefore, the fact that at the time of taking his deposition he was not engaged in so remunerative business as his former employment, which insured him at least $60 per month, and his known energy and activity, it is reasonable to assume that between the 1st day of February and the 6th day of September, 1899, he could earn at least 30 per cent. of his former definite salary, which sum, deducted from the aggregate of his salary up to September 6, 1899, would leave, say, in round numbers, $300 as a claim against the estate.

In respect of the 3 per cent. commission on sales over $15,000 for one year, provided for in the contract, there is more difficulty. On this issue the burden of proof rests upon the claimant to furnish the court some tangible, substantial data upon which to estimate such probable earning, to enable the court to keep out of the field of mere speculation and guess. The evidence in this case shows that the amount of sales or business done by Silverman Bros. for the year preceding September, 1898, was $13,000; and when one of the Silverman Bros. was on the witness stand he was inquired of as to how he came to fix upon $15,000 as the amount beyond which he allowed the 3 per cent. commission. His answer was that he figured upon an increase of $2,000 in business. So, it is made manifest that, taking as a basis for reasonably estimating the amount of business for the year between September, 1898, and September, 1899, the accomplishment of the preceding year, he did not expect a business of over $15,000, and therefore the 3 per cent. commission would largely depend upon the extraordinary energy and good management of the claimant himself. The claimant seeks to base his estimate upon an excess

over $15,000 upon the amount of sales made between the 6th of September, 1898, and the 9th day of January, 1899, when the deed of trust was made, which aggregated about $10,000. This achievement, however, was so unusual and sporadic as at least to excite inquiry, if not suspicion. It does not even appear whether or not the goods were sold during these four months above or below cost. The evidence shows that at the time of the failure, January 9, 1899, the total indebtedness of the concern was about $22,000, while the schedule in bankruptcy disclosed the amount of goods on hand to be only $12,000 worth. This abnormal condition of affairs naturally enough warrants the inference that the concern was hurrying off its goods either to meet its pressing liabilities, or in anticipation of failure, and therefore the amount of such sales for a few months under such conditions can afford no safe basis for estimating what amount of goods in excess of $15,000 would or could have been sold in a legitimate course of business for the whole year. While it may be conceded to the contention of claimant's counsel that there was an implied obligation on the part of the merchants to continue and keep up their business to afford the claimant an opportunity to realize his just expectations under the contract, yet there was no express or implied obligation on their part to increase their purchases and to enlarge their business. The law would only exact that their business should proceed in the usual and ordinary way, as it was being conducted at the time of the execution of the contract, and was subject to the vicissitudes of trade and the ordinary incidents of misfortune in business. The case is quite unlike that relied on by claimant in Lewis v. Insurance Co., supra. In that case the claimant was employed as an agent of an insurance company on a compensation of 35 per cent. on premiums of insurance effected by him and the renewals thereof; and because of the fact, found in that case, of a well-known custom or usage among insurance companies by which the adjustment was made as to the value of renewals of policies for any length of time, readily ascertainable by statistical tables and comparisons, a certain degree of accuracy was obtainable for the estimation of future earnings of the claimant, and therefore the court was enabled to approximate with some degree of certainty as to what would be the future earnings of the agent. No such criterion is furnished in this case. And when the amount of sales for the preceding year amounted to nearly $13,000, and that, too, under the assistance of this same claimant, it does seem to the court that it would be the merest guesswork to assume that the sales for 1898 and 1899 would exceed $15,000. The claimant has not even furnished the court with any evidence as to the amount of goods on hand on the 6th day of September, 1898, when he made his contract. And, as he was then in practical management of the store and its business, he is presumed to have known what was then on hand. Nor has he furnished the court with any evidence as to the quantity or value of the goods purchased by the concern between the 6th day of September, 1898, and the 9th day of January, 1899. And if its business was so conducted under his auspices as that by the 9th day of January, 1899, its stock was run down to $12,000, with accumulated debts of $21,000

or $22,000, the very least that can be said is that he has furnished a very unsafe criterion by which the court is to award him a judgment for commissions on sales beyond $15,000. While it is true, as a general proposition, that, as against the party who has occasioned the breach of a contract giving the employé a right of action on account of his discharge, the court should indulge a large liberality in favor of the party wronged in ascertaining the amount of his damages on indefinite criteria, yet the court, to avoid a bald act of confiscation and of injustice to other creditors of the bankrupt, should not proceed to judgment for mere speculative damages. The claim being unliquidated, its allowance against the estate is provided for by subsection b, § 63, of the bankrupt act, which provides that "unliquidated claims against the bankrupt may, pursuant to application of the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." The claimant was therefore premature in presenting his claim for allowance before the referee without first making application to the court to direct the manner of liquidating it. To obviate this difficulty, the parties have stipulated that the court, on this alleged review, may liquidate the claim, and the court has so directed.

The conclusion of the whole matter is that the court finds that the claimant is entitled to have allowed against said estate the sum of $300, which covers a period of eight months; and as under Bankr. Act, § 64b, subsec. 4, wages due to clerks or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $300, are given priority, to work out the equity of the case the claimant should be allowed three-eighths of $300 as a preferred claim, amounting to $112.50, and the balance as a general creditor; and the claim will be certified to the referee, to be allowed accordingly.