WILLIAM D. ELLIS *vs.* LOUIS T. BLOCK & others.

Suffolk.   November 9, 10, 1904. — February 28, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Contract*, Construction, What constitutes. *Practice, Civil*, Verdict.

In an action of contract, where it appears that oral negotiations between the parties were followed by a correspondence in writing, the questions, whether a contract was made in part by word of mouth and in part by the correspondence in writing, and if so what that contract was, finally must be passed upon by the jury under proper instructions from the court, but in giving such instructions the court must deal with the question whether the correspondence in writing properly interpreted changed the mere negotiations, if they were such, into a contract.

In an action for breach of a contract, alleged to have been made by the defendants, to form a proposed corporation and employ the plaintiff at a certain compensation to sell its stock, two letters of the defendants to the plaintiff, one stating that all overdue accounts must be settled before any preparations can be made and another stating that the defendants wish to syndicate their plants but cannot do it so long as their overdue accounts are unpaid, and that if the collecting of the accounts is attended to quickly by the plaintiff both the plaintiff and the defendants can make some money, do not constitute an acceptance of a proposition previously discussed by the parties that the plaintiff shall remain in the employ of the defendants as their agent until the outstanding debts are collected and that the defendants then shall form a corporation and employ the plaintiff to sell its stock.

If a presiding judge after the return of a verdict questions the jury as to the grounds on which the verdict was rendered the answers of the jury have the effect of special findings.

In an action of contract against the members of a firm on an alleged contract to employ the plaintiff for a certain purpose at a compensation named, the plaintiff testified to a conversation between himself and one of the defendants which the plaintiff contended constituted an oral contract. The defendant who took part

in the conversation testified that it consisted of a proposition made by the plaintiff to which he returned an evasive answer. Certain letters written by the same defendant were introduced by the plaintiff which he contended made a binding contract if the oral conversation did not. The defendants contended that if the agreement was oral it was not to be performed within a year, so that the action was barred by the statute of frauds. The presiding judge instructed the jury that if the conversation was a mere proposition on the part of the plaintiff it was for the jury to say whether the defendants accepted the proposition by the letters. This was erroneous, as the letters were not susceptible of such a construction. The jury returned a verdict for the plaintiff, and in answer to a question by the judge stated that they had considered the statute of frauds and also the liability of the firm for the acts of the partner. The plaintiff contended that the special findings contained in this answer cured the error of law in the instruction of the judge in regard to the effect of the letters, as the questions of the statute of frauds and of ratification arose only in case the contract was an oral one made before the letters were written. *Held*, that the special findings in the answer of the jury did not cure the error, as the findings could not be extended beyond the statement that the statute of frauds and ratification had been considered, and did not show that the verdict might not be founded on an acceptance of an oral proposition by the letters.

CONTRACT, against Louis T. Block, Joseph E. Block, Samuel Block and Edward J. Mack, copartners doing business at Cincinnati in the State of Ohio under the firm name Elias Block and Sons, with five counts, the first for an alleged breach of contract more particularly stated in the fourth count substituted by amendment, the second for alleged services in collecting accounts for the defendants, the third and fifth on accounts annexed, and the fourth alleging a breach of a contract, by which the defendants, the owners and operators of a distillery in Kentucky, called the Darling Distillery, agreed that the plaintiff, who had been the eastern agent of the defendants, should continue in their employ and should assist the defendants in the organization of a corporation of which the plaintiff should sell the capital stock, receiving as compensation the sum of $50,000. Writ dated May 26, 1898.

The answer contained a general denial and an allegation of payment, and set up the statute of frauds. At the trial in the Superior Court before *Harris*, J. the jury returned a verdict for the plaintiff on the fourth count, at first in the sum of $15,000, and afterwards, adding interest from the date of the writ by instruction of the judge, in the sum of $19,322.50. Upon the claim of the plaintiff for $2,000 for services in collecting accounts for the defendants, as alleged in the second count and in the first

items of the third and fifth counts, the jury found for the defendants. The defendants alleged exceptions, raising the questions stated by the court.

The tenth ruling requested by the defendants was as follows: "That the letters introduced into this case do not constitute a contract in writing on which recovery can be had in this action."

The third ruling requested by the plaintiff was as follows: "If the jury find that the contract of promotion alleged was not concluded at the interview in June, 1896, and if the plaintiff then requested the defendants to enter into the following contract with him, that is, that if the plaintiff should remain in the defendants' employ and endeavor to collect in their outstanding accounts the defendants would incorporate their distilleries, employ him to sell the stock in the corporations so to be formed and pay him therefor $25,000 in cash and $25,000 in said stock, and the defendants said they would consider the matter and let the plaintiff know later, then the letters of March 12, 1897, and March 19, 1897, would constitute a binding contract to that effect."

*C. W. Bartlett & A. C. Burnham*, for the defendants.

*S. L. Whipple & D. A. Ellis*, for the plaintiff.

LORING, J. We are of opinion that there was a mistrial in this case.

The plaintiff testified that at an interview in Boston between himself and the defendant Louis T. Block, had in June, 1896, Block offered on behalf of the defendant firm to pay him $50,000, in addition to the compensation he was entitled to as their agent in New England, if he would remain with them as their agent until the outstanding accounts were collected, and place so much of the capital stock of a corporation with a capital of $500,000, which he agreed should be formed to take over the defendants' Darling Distillery; that the plaintiff accepted the offer and agreed to buy $25,000 of the stock. During the conversation Block told the plaintiff that he was to be the selling agent, and in answer to the plaintiff's question: "When do you want to do this?" the plaintiff testified that Block said: "We cannot do it now, as you know the condition of the whiskey market is in terrible shape. We cannot do it until next year, until you collect your accounts."

Louis T. Block testified that it was the plaintiff who at this interview suggested the idea of incorporating this distillery, and that he did not refuse, but gave him an evasive answer to induce him to continue with them as their agent because they had some $50,000 of accounts outstanding, resulting from sales made by the plaintiff which no one could collect so well as he could.

After telling the jury that if the matter was concluded at the interview in June, as the plaintiff testified, he was entitled to a verdict unless the statute of frauds stood in the way, the presiding judge gave them this further instruction : " If, on the other hand, it was simply a proposition, a matter talked over, laid aside for future consideration and future dealing, then, if it was left open, it was not a contract, it was a mere thing discussed, and it would be for you to say then whether, out of the evidence that the parties have presented in the correspondence, there was ever an agreement of the minds of the parties upon the definite terms of a new and another contract, at another time than on the 11th of June, '96, but having the same terms and the same conditions, which were expressed in writing. You will have the evidence before you, and I cannot instruct you upon the facts, because, the way this case stands before you, it is for you to pass upon that question."

We are of opinion that there is nothing in the subsequent correspondence which warranted such a finding. As the question was a question whether a contract, and if a contract what contract, was made in part by word of mouth and in part by written correspondence, the matter had to be passed upon by the jury under proper instructions from the court.

But whether the written correspondence made the previous oral negotiations into a contract (if the jury found that what was said in June amounted to no more than negotiations) was a matter to be dealt with by the court in its instructions to the jury. Had the previous negotiations been carried on in writing the question would have been for the court whether the subsequent letters concluded the matter, by converting what had been no more than negotiations into an obligation. That question was none the less for the court because the negotiations had been carried on by word of mouth. The only difference is that in the former case the whole question of the contract is for the

court while in the latter case it is for the court to deal with the question which is for it in its instructions to the jury, and to leave the whole question under those instructions to the jury. See *Bascom* v. *Smith,* 164 Mass. 61; *Aldrich* v. *Bay State Construction Co.* 186 Mass. 489.

The plaintiff contends that the subsequent correspondence did make the previous negotiations into a contract, and he rests his contention to that effect on the plaintiff's letter of March 12, 1897, the defendants' answer of March 15 and their letter of March 19. In his letter of March 12, 1897, the plaintiff wrote: " I would like to know if there is anything in it about your bonding your distilleries ; if so let me know, as I would like to prepare myself for it." On March 15 the defendants wrote in answer: " Regarding the bonding of our distilleries can only say that all the overdue accounts must be settled up before we can make any preparations to that end; we need funds and are forced to use extra efforts to accomplish and satisfy our wants." On March 19 the defendants wrote: " We want to syndicate our plants, but cannot do it as long as those overdue a/cs are unpaid. We can both make some money if you attend to this matter quickly. Let us hear from you."

The most that can be claimed for the answer of March 15 is that no preparations were to be made until the overdue accounts were settled up. That is not the assumption of an obligation that preparations shall then be made. And the most that can be claimed for the letter of March 19 is an expression of a " want " on the defendants' part to have the distillery in question incorporated ; but that stops short of an assumption of an obligation on their part to incorporate it, as had been proposed by word of mouth. The matter is not helped by the further statement that if the collecting of the accounts is attended to quickly both can make some money. What the plaintiff seeks to accomplish by these letters is to turn what Louis T. Block refused to put the firm under obligation to do, when he talked with the plaintiff in June, into an obligation on their part. At that time Block's testimony was that he gave an evasive answer; said he would talk with his brothers about it and write to him. But if it be assumed that this was that writing, it falls short of being a promise and it falls short of making those negotiations

into an obligation. It is obvious that a person who rested content with these letters did not think it was wise to push the matter to a conclusion at that time.

The more difficult question is whether the defendants are entitled to complain of this mistrial.

The plaintiff contends that the tenth ruling asked for by the defendants is to be construed to mean that the letters alone, that is to say, apart from any oral testimony, do not constitute a contract in writing. He admits that they do not. More than that, he says that he never contended that they did; that what he contended was that if the jury found that the conversation in June did not result in an agreement they could find that the letters in March, 1897, (Exhibits 6, 7, 8,) amounted to a renewed offer by the plaintiff of this same proposition and an acceptance thereof by the defendants. But that would not be a contract in writing. And he contends that for these reasons the ruling (being construed as he insists it should be construed) had " no real relation to the case and could be refused by the court." It seems plain that this was not what any one at the trial understood this ruling to mean. The plaintiff in the third ruling requested by him fell into a part of the inaccuracy which he now finds with the defendants' tenth request: " then the letters of March 12, 1897, and March 19, 1897, would constitute a binding contract." And the presiding judge, in the portion of the charge now under consideration, tells the jury that they can find that these letters made a new contract " which was expressed in writing." More than that, if the ruling was understood to mean what the plaintiff now says it meant, it must have been refused; as the plaintiff now says it could have been refused, or it might have been given as a preliminary instruction to clear the way for the jury to approach the question on which the case really turned. But neither was done. On the contrary the presiding judge said that he thought he had given the instruction in substance. What the presiding judge must be taken to have meant when he said that is not altogether clear. What he did was to leave the construction of these letters to the jury, and, as they construed them to be or not to be a promise on the part of the defendants to do what was proposed in June, they were to find that they did or did not make out a contract. By so doing he refused the

plaintiff's third request that the letters as matter of law "would constitute a binding contract to that effect." The most plausible explanation is that the presiding judge at the moment thought that if he refused the ruling requested by the plaintiff he gave that asked by the defendants. But that is not so. He did not give the tenth in words or in substance, and the defendants, by excepting to the refusal to give the tenth ruling and to the charge so far as it was inconsistent with it, saved their rights. See in this connection *Commonwealth* v. *Meserve*, 154 Mass. 64, 75 ; *Brick* v. *Bosworth*, 162 Mass. 334.

In *Fairman* v. *Boston & Albany Railroad*, 169 Mass. 170, and in *Commonwealth* v. *Quinn*, 150 Mass. 401, relied on by the plaintiff, there was no special ruling requested covering the point on which there was a misdirection, as there was in the case at bar. In the other case relied on by him, *Dixon* v. *New England Railroad*, 179 Mass. 242, there was a general exception to a long charge, not an exception to it so far as it was inconsistent with the rulings requested.

The verdict first brought in was a general verdict for the plaintiff in the sum of $15,000, although two separate causes of action had been tried and submitted to the jury. This led the presiding judge to question the jury as to the grounds on which they rendered their verdict. Among other questions the presiding judge asked if the jury had considered the statute of frauds, to which the foreman answered, in the presence of the jury and before the verdict was recorded, "Yes, sir, distinctly; also for the liability of the firm for the act of the partner." The plaintiff contends that this answer, having the effect of a special finding, *Spurr* v. *Shelburne*, 131 Mass. 429, cures the error now before us. His contention is that these two questions (of the statute of frauds and of ratification) did not arise unless the jury found that the contract which they found was made, was made by word of mouth by Louis T. Block at the June conference between him and the plaintiff. The defendants on the other hand contend that the jury must be taken to have found that the contract was concluded by the letters in March, 1897, because they disbelieved the plaintiff's testimony on the other claim tried. They also point out that the letter of March 19 appeared to have been written by Louis T. Block, and they argue that, so far as this

letter is concerned, ratification had to be shown. Going beyond this they point out that all that the foreman said as to ratification was that they had considered it and that although they took a vote on the question whether the contract could be performed within a year, and found that it could be, it is not stated that this is what the verdict was rendered on. Enough has been stated to show that these answers cannot be extended by argument to settle a fact beyond that directly covered by them.

> *Exceptions sustained, and a new trial ordered on the fourth count and on the second items in the third and fifth counts.*