INTERNATIONAL TEXT-BOOK COMPANY, APPELLANT, V. WILLIAM H. MARTIN, APPELLEE.

FILED NOVEMBER 13, 1912. No. 17,382.

1. Former Opinion Affirmed. Our former opinion, reported in 82 Neb. 403, re-examined and adhered to.

2. Instruction of the trial court, considered in the opinion, *held* erroneous, in that it is not based upon any competent testimony.

3. Contracts: BREACH: EVIDENCE. Evidence examined and referred to in the opinion, *held* insufficient to sustain the judgment.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed with directions.*

*Hall & Bishop* and *David A. Harrington,* for appellant.

*McGraw & Wilke, contra.*

FAWCETT, J.

This case is before us a second time. Our opinion upon the former hearing may be found in 82 Neb. 403. For a statement of the controversy reference is made to that opinion. It is sufficient, for the purpose of this opinion, to state that plaintiff conducts a correspondence school; that defendant entered into a contract with it to take its course of instruction in electrical engineering, for which he was to pay $78 in monthly payments of $2, less 10 per cent., and plus $1 for a transfer fee; that he continued his monthly payments until he had paid about $50, when he ceased making such payments, and subsequently notified the agent of plaintiff that he did not intend to carry out the contract. The books and papers necessary to commence his studies were sent to him by plaintiff, and we gather from his testimony that they are still in the box in which they were shipped to him. However that may be, he never entered upon the studies.

Upon the former hearing we held that the district court erred in instructing the jury that, if plaintiff was entitled to a verdict, the measure of its recovery would be the loss of its profit on its contract, plus the value of the services it had rendered defendant. The reason given for our holding was: "It will be observed that plaintiff has not been in default in any particular in performing, so far as defendant would permit it to perform, the contract; that its undertaking is to continue its course of instruction until it has educated defendant to such a degree of proficiency as to entitle him to a diploma. No one can logically establish the period during which its teachers must send out questions and correct answers given by defendant in response thereto. The evidence indicates that plaintiff employs nearly 400 teachers, and the addition or loss of one student would hardly increase or diminish plaintiff's expense to any perceptible degree. The contract is entire, and, upon defendant's refusal to perform, and subsequent to the maturity of all of the monthly

payments, plaintiff ought to recover the consideration defendant agreed to pay it, unless defendant can show some facts that reasonably and definitely tend to mitigate plaintiff's damages." Upon the last trial in the district court, evidently influenced by the last clause of the last sentence above quoted, the court again instructed the jury that, if they should find from the evidence that the cost to plaintiff of fulfilling its contract amounts to more than the balance due from defendant on his contract, then their verdict should be for the defendant. Construing the clause from our former opinion, to which attention has been directed, to mean what the trial court evidently construed it to mean, still this instruction should not have been given, for the reason that defendant utterly failed to show by any competent evidence any "facts that reasonably and definitely tend to mitigate plaintiff's damages."

The only evidence offered upon that point is the testimony of Professor Stout, of the University of Nebraska, and Mr. Penny, an assistant in the office of the state superintendent. Professor Stout testified as follows: "Q. Do you know anything about the nature of the papers usually sent out by correspondence schools * * * in teaching electrical engineering? A. I do not recall that I have ever seen any of the electrical engineering papers. Q. Do you know the usual papers sent out to students, the class of paper, the style of questions asked, the amount of questions asked as a general thing in the papers sent out by correspondence to those students? A. Taking the question on a general basis that way, I would say that I do not know. My observation is limited to comparatively few papers. Q. Do you know how long it takes a competent person to examine the answers sent to questions asked in one of those papers? A. For an unqualified answer, I think I would have to answer no." On cross-examination, his testimony was: "I meet classes day after day in the higher branch of civil engineering. I have nothing to do with electrical engineering at all. My experience is based on the four-years' course of instruc-

tion in engineering leading to the degree of civil engineer. I have had no experience at all in correspondence schools, never taught in one, and do not know about the expense of running such a school, except as I should estimate it in comparison with my work in the university. * * * I do not know anything about the International Text-Book Company so far as their equipment and number of instructors is concerned, nor anything about the cost with which they handle the students. I don't know anything about what it costs them to handle the students of electrical engineering. * * * Q. The point is, you don't know anything about their facilities for teaching electrical engineering? A. Putting the question that way, I think my answer would be, no, I don't. I do not know the number of instructors they have in the electrical engineering, what they pay, nor how many students an instructor can attend to." Mr. Penny, upon cross-examination, testified: "I do not know anything about the cost of instruction per student in electrical engineering at the International Text-Book Company school at Scranton, nor anything about the teaching or administrative force of that school, nor anything about the expense of operating that school per student in electrical engineering at any time. Where a school makes a business of teaching by correspondence and is organized on that basis, I have no experience as to the cost per student for electrical engineering." Counsel for plaintiff moved to strike out the testimony of these witnesses. His motion was overruled. In this ruling the district court erred. Their own testimony clearly shows their incompetency. Indeed, we are unable to see how any witness could have been found who could testify to any facts which, as stated by Judge ROOT, would "definitely tend to mitigate plaintiff's damages."

In 2 Sedgwick, Damages (9th ed.) sec. 612, it is said: "In some cases the plaintiff may recover the whole contract price. A common case is that of a schoolmaster. If a scholar is removed from the school during the quarter,

the schoolmaster may recover the tuition fee for the whole quarter (citing cases). * * * The principle upon which these cases rest seems to be that the whole contract price is to be given, because it is impossible to show with the required certainty any pecuniary outlay which the plaintiff has been saved by the breach. The school must continue in session, with its entire corps of instructors, although a scholar is withdrawn. * * * If, in such a case, the plaintiff is put to the same expense in time and money as if he had fully performed, the contract price of the whole work is the measure of damages." This reasoning exactly fits the case at bar.

After having examined two records made by the parties in this case, we are unable to discover any theory upon which defendant can escape his liability to plaintiff for the balance due under his contract. The contract is entire. Plaintiff has at all times been ready, and is still ready, and willing to carry out its part. Defendant has shown no good reason why he should not do the same. The litigation should end. The judgment of the district court is therefore reversed and the cause remanded, with directions to that court to enter judgment in favor of the plaintiff for $22.50, with interest from the time of the commencement of the suit in that court.

REVERSED.