HOLTON *v.* COOK.

Opinion delivered May 19, 1930.

McAdoo, Neblett, O'Connor & Cladyett and J. A. Tellier, for appellant.

Donham & Fulk, for appellee.

MEHAFFY, J. This suit was begun by appellant against appellee to collect $900 balance due on a contract alleged to have been made for tuition and board of appellee's minor daughter for the school year 1927-1928. The appellee lives at Malvern, Arkansas, and his sixteen-year-old daughter was attending school in Little Rock, and, while attending school in Little Rock, she wrote to a number of schools for catalogues. After receiving a number of catalogues, she decided she wanted to attend the Holton-Arms School, and she so informed her parents, and they agreed that she might attend this school. She took the catalogue home, but her father never examined it, and neither the girl nor her parents had ever noticed what is called "the agreement" in the catalogue. The catalogue contained the following: "The school reserves the privilege of asking pupils to withdraw for infraction of the honor rules of student government. Pupils are entered for the entire year, and no reduction is made for either absence or withdrawal. Tuition is payable half yearly in advance on the opening day of school and on the first day of February." In addition to this, the daughter signed an application which contained a number of blanks to be filled, and, among other things in the application, it was

stated that the price varied from $1,400 to $1,800, according to the size and location of the room, and the daughter selected a room, the price of which was $1,800. This catalogue received by the daughter was for 1926-1927, and she attended the Holton-Arms School that year, and, before leaving in June, 1927, she notified the plaintiff verbally that she was coming back for the school year 1927-1928. No contract was signed, and no additional catalogue furnished at that time. She went back to school in the fall of 1927, and remained at the school until December 14, 1927, when she went home. On December 31, 1927, Mrs. Holton received the following telegram from Mrs. Cook: "Regret that Verna is not returning to school. Letter following." She also received the following letter, written January 4: "I regret very much to say that Verna will be unable to return to school. I have been considering the matter; therefore I delayed writing you."

The evidence tends to show that she did not go back to school because she became wholly incapacitated from pursuing her studies at the school by reason of defective eyesight, and for that reason alone did not return to school at the close of the Christmas vacation of 1927. It is unnecessary to set out the evidence in full. The court found in favor of the defendant.

The only question for our consideration is, whether the fact that the appellee's daughter becoming incapacitated relieved him from liability for tuition and board for the balance of the year.

It is earnestly contended by the appellant that the facts show that the parties entered into an entire and indivisible contract, and that the appellee is liable for the board and tuition for the entire year whether the absence or withdrawal of appellee's daughter was voluntary, or whether it was caused by illness or incapacity to pursue her studies. There is some conflict in the authorities, and appellant calls attention to a number of authorities relied on to sustain her contention.

The first authority to which attention is called by appellant, and which is relied on, is a statement of the law in 24 R. C. L. p. 630. It is stated in that paragraph: "A parent is bound by a provision in a school catalogue that pupils may be entered only for the entire year, and that no money will be refunded if the pupil is withdrawn or expelled, if such provision was known to him when he entered his child. In such case the contract is entire. The fact that a pupil is incapacitated by illness does not relieve the parent from liability for tuition during that time." It will be observed, however, that this statement of the law is based on the fact that the provision was known to the parent when he entered his child. The section quoted from and relied upon by appellant contains the following, after the statement quoted by appellant: "It has been held that there can be no recovery of tuition if the pupil is prevented by illness from attending school at all. This is on the ground that the parties must have acted on the assumption of the continued ability of the promisee to give, and the promisor to receive the proposed instruction." There is cited under this section, *Stewart* v. *Loring,* 5 Allen (Mass.) 306, 81 Am. Dec. 747. The court in that case said: "But if we may suppose the real purpose of the writing to have been to insure the plaintiff in advance that his school should be patronized, and that the defendant would be a pupil, then the answer, as it seems to us, might be reasonably made that the party, without any fault of his own, was from subsequent ill health rendered physically incapable of attending the gymnasium as a pupil. The parties must have acted upon the assumption of the continued ability of the promisee to give, and the promisor to receive, the proposed instruction."

The next case to which attention is called by appellant, is *Hall* v. *Mount Ida School for Girls,* 258 Mass. 464, 155 N. E. 418. The school was a school for girls, and appellant's granddaughter was discharged because she secretly married while attending school. One difference

between that case and the instant case, is that in the Hall case the pupil was expelled because of her misconduct; in the instant case the withdrawal was because of incapacity of the pupil. In the Hall case it was agreed: "That contracts for board, lodging and instruction at a private school for a specified time have always been held to be entire contracts and not divisible; and as a practical consequence further agree that the plaintiff is entitled to recover in the action $900 or nothing." The question involved in that case was very different from the question we have here.

The next case relied upon by appellant, is *Pierce* v. *Peacock Military College* (Tex.) 220 S. W. 191. The contract made in the Peacock case expressly referred to the catalogue, and made it a part of the contract. The applicant, Mrs. Pierce, stated in her letter that she had examined the catalogue, and accepted the rules and regulations as published both in the catalogue and the literature of the college. This case does not discuss the question which is before us. That was a written contract and a voluntary withdrawal of the pupil, and not a question of incapacity of the pupil to receive instruction.

The next authority referred to, is Sedgwick on Damages, which cites the *International Text Book Co.* v. *Martin*, 92 Neb. 430, 138 N. W. 582. The opinion in the International Text Book Company case quotes from Sedgwick on Damages as follows: "In some cases the plaintiff may recover the whole contract price. A common case is that of a school master. If a scholar is removed from the school during the year, the school master may recover the tuition fee for the whole quarter." The case does not discuss the question involved here, and in fact does not state the facts in that case but refers to the same case in 82 Neb. 403, 117 N. W. 994. The facts in that case as stated by the court in 117 N. W., shows that a contract was entered into, and that the defendant notified the plaintiff that he did not intend to perform the contract. This was a voluntary withdrawal or breach

of the contract, and there was no question of illness or incapacity or other excuse for not performing the contract.

The next case to which attention is called by appellant, is *Vidor* v. *Peacock* (Tex.) 145 S. W. 672. It was held in that case: ''That Vidor agreed to the catalogue provision on the subject, which was that money advanced on account is never refunded except in cases of severe illness whereby a pupil withdraws from school by the advice of a San Antonio doctor and then the loss is shared equally by the parent and the school. No rebate under any circumstances is allowed for withdrawals during the last month of the school year. Pupils entered are obligated to remain to the end of the year. The court held that this was defendant's contract, and that he was obligated to pay for the whole year, except, and as a condition precedent to the exception, the boy withdrew on account of severe illness and then upon the advice of a San Antonio physician.'' The parties had a right to contract as to the manner in which the illness would be determined, and they did contract that it should be determined by a San Antonio physician, and this contract was violated, and the court held that a recovery could be had.

The case of *William* v. *Stein,* 100 Misc. Rep. 677, 166 N. Y. S. 836, relied on by defendant, merely holds that under the contract in that case the school was entitled to recover. In that case, however, the application for admission expressly stated that it was made for the school year, according to the terms, rules and regulations in the catalogue, to all of which the applicant agreed. In the catalogue special attention was drawn to the notice that pupils were entered for the entire year, and that no reduction would be made for absence or withdrawal, except in cases of protracted illness. In that case the pupil voluntarily withdrew, and there was no question of illness involved.

The next case relied upon by appellant is *Kentucky Military Institute* v. *Cohen,* 131 Ark. 121, 198 S. W. 874, L. R. A. 1918B, 709, but that does not discuss the question involved here. There was no question of illness or incapacity, but was simply a question of breach of contract on the part of the school, and withdrawal of the pupil because of said breach.

There are one or two other cases referred to by appellant, but the cases involving simply a breach of contract, or voluntary withdrawal or expulsion, have no application here. The question here is, whether the incapacity of the pupil to receive instruction discharges the parent from liability.

"In all contracts in which the performance depended on the continued existence of a given person or thing, a condition is implied that the impossibility arising from the perishing of the person or thing shall excuse the performance. In none of the cases are the terms in words other than positive, nor is there any express stipulation that the destruction of the person, or thing, shall excuse the performance, but that excuse is by law implied, because from the nature of the contract it is apparent that the parties contracted on the basis of the continued existence of the particular person or chattel." 6 R. C. L. 1005.

Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive, and shall be capable of performing the contract, so that death or disability will operate as a discharge when a contract is made like the one involved here. The parties must have acted on the assumption of continued ability for the school to give, and the pupil to receive instruction. This is implied in contracts of this character, unless this implied condition is plainly negatived by the contract itself. See *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90, 186 S. W. 622; 24 R. C. L. 630; 6 R. C. L. 1012. In other words, the parties to the contract necessarily understand that it is on condition that the pupil shall be able to receive instruction, and that the school

shall be able to give it, and either death or disability which renders the performance impossible discharges the contract. Contracts of this character must be construed as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible without fault of the contractor. In contracts of this character there is an implied exception in case of incapacity to receive instruction.

We do not mean to say that parties could not contract so that there would be no condition implied, but in this case they have not done so. If for any reason, not the fault of appellant, the school had been destroyed, or it became impossible to give the instruction, this would excuse the appellant from complying with the contract. If a pupil without fault becomes incapacitated from receiving instruction, the parent is excused from performing the contract. The evidence in this case shows, and the trial court found, that the physical disability of defendant's daughter to further pursue her studies or to attend appellant's school rendered the performance of the contract impossible, and absolved appellee from all liability thereunder.

In the instant case, appellee's attention was never called to the provision in the contract, but Mrs. Cook testifies that when she wrote to appellant, and when she took her daughter to Washington, the appellant did not mention anything about the tuition to her, did not mention anything about the time she should leave her daughter, or about any contract. When she got ready to leave, she mentioned tuition to appellant, and appellant said there was no hurry about it, and she would send bill later. In the cases relied upon by appellant, the written contract itself in most of them called attention especially to provision in the catalogue, and made it part of the contract, and in other cases relied on there was no question of the incapacity of either party, and where it is shown that a pupil has withdrawn because of incapacity to pursue her studies, and there is nothing in the contract to the con-

trary, it will be implied that the total incapacity of either party excuses the performance. Finding no error, the judgment of the Pulaski Circuit Court is affirmed.

Justices SMITH, HUMPHREYS and BUTLER dissent.