**BARNEBEY et al. v. BARRON G. COL-LIER, Inc.**[*]

**BARRON G. COLLIER, Inc., v. BARNEBEY et al.**

Nos. 9651, 9677.

Circuit Court of Appeals, Eighth Circuit.

June 26, 1933.

Fred S. White of Omaha, Neb. (S. J. Leon, of Omaha, Neb., on the brief), for Walker H. and Oscar L. Barnebey and Middle States Creamery Co.

Howard Saxton, of Omaha, Neb. (John E. Eidam, of Omaha, Neb., on the brief), for Barron G. Collier, Inc.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

Barron G. Collier, Inc., brought this action at law against Walker H. Barnebey and Oscar L. Barnebey, partners doing business under the name of Middle States Creamery Company, to recover damages growing out of an alleged contract for the sale of street car advertising to be furnished by plaintiff to defendants. Both parties have appealed, and to avoid confusion the parties will be referred to as they appeared in the lower court.

It is alleged in the petition of plaintiff that it is engaged in the business of furnishing advertising in the street cars in the city of Omaha; that defendants are engaged in business in Omaha under the firm name and style of Middle States Creamery Company; that plaintiff is the lessee of advertising space in the street cars in operation in the city of Omaha, Neb., and permitted to sublet portions of the space to advertisers; that on the 31st day of July, 1929, plaintiff and defendants entered into a contract in writing for the

[*]Rehearing denied July 3, 1933.

furnishing of car advertising in one-fourth of the street cars of the Omaha and Council Bluffs Street Railway Company and of the Omaha & Southern Interurban Railway Company, for a term of thirty-six months, commencing February 1, 1930, for which defendants agreed to pay plaintiff the sum of $92.50 per month at the end of each month during the term of the contract. The petition is in two counts or causes of action. The first cause of action is to recover the contract price for the advertising furnished from February 1, 1930, to February 24, 1931, in the sum of $1,189.20. The second cause of action is to recover damages for the alleged breach of the contract, which breach it is alleged occurred on February 24, 1931; it being alleged that plaintiff suffered damages on account of said breach in the sum of $2,140.80.

The contract, a copy of which is attached to and made a part of the petition, recites certain terms and conditions of service, and provides, among other things, that the contract shall not be binding until accepted by plaintiff, and that upon acceptance plaintiff agrees to furnish the service on the terms stated therein, and that the contract contains all the agreements and representations of the parties, and that no representation or promise not set forth therein shall affect the obligations of either party.

The answer admits the copartnership, and denies every other allegation contained in the petition. As an affirmative defense, it alleges that plaintiff by and through its agent and representative, in order to induce defendants to make an offer and proposal for the street car advertising referred to in the contract, wrongfully, falsely, and fraudulently represented to defendants in substance (1) that the street car advertising rates would be materially increased more than 50 per cent. within a few weeks, but that, if defendants would sign the proposal as indicated by the contract, they might have the benefit of the then existing lower rates; and (2) that, if defendants would sign the contract, it would be retained and held in the offices of plaintiff's agent in Omaha, and it would not be sent to the home office of the company until it was definitely accepted, ratified, and approved by defendants, and that the contract would be regarded as a conditional offer which defendants could accept or cancel before February 1, 1930, by notifying plaintiff's agent in Omaha, and that, if advertising rates did not go up at least 50 per cent. within a few weeks thereafter, there would be no

contract. It is then alleged that the contract was signed and delivered to the agent of plaintiff in reliance upon these representations and promises; that the statements and representations were false and fraudulent, and made by plaintiff's agent without any intention on the part of plaintiff to keep and perform the same, but for the fraudulent purpose of inducing defendants to sign the contract; that they were relied upon by defendants and believed to be true.

The answer further alleges that the representations as to the increase in the price of advertising were false, fraudulent, and untrue; that plaintiff knew they were untrue; that advertising rates were not increased to the extent of 50 per cent., nor materially increased before February 1, 1930; that on and before February 1, 1930, plaintiff and its agent were notified that the advertising service was not desired; that defendants had decided not to exercise their option contemplated by the agreement, and that defendants notified plaintiff to discontinue the then existing advertising in the street cars by withdrawing defendants' then existing advertisements, effective January 31, 1930; that the contract was never accepted by plaintiff company, and that notice of acceptance was not given to defendants, and that defendants canceled the agreement before plaintiff directly or indirectly indicated its acceptance of the agreement. In answer to the second cause of action, defendants, in addition to the allegations stated in their answer to the first cause of action, allege that the action is prematurely brought.

At the close of all the evidence, plaintiff moved for a directed verdict in its favor on each cause of action. The court sustained the motion on the first cause of action, and on the second cause of action sustained the same for the part of the contract price which had accrued up to the first day of the term of court. The court refused to submit to the jury any issue as to whether or not the contract was obtained by false and fraudulent representations, and also refused to submit the question as to whether or not the contract was conditional. From the judgment entered on the directed verdict, each party has appealed, the defendants appealing from the entire judgment, and the plaintiff appealing from that part of the judgment which failed to sustain its motion for a directed verdict for the full amount prayed for on both causes of action, and in directing a verdict for only $2,579.51 and costs, instead of for the full amount prayed for.

The evidence on behalf of the defendants tended to show the following facts: That some time prior to February 1, 1929, a Mr. Fitch solicited defendant Walker H. Barnebey to enter into a contract for street car advertising for the term of one year, advising him that he was representing plaintiff. Such a contract was entered into, and, while it was in force, and during the month of July, 1929, Mr. Fitch rushed into defendants' place of business in an excited manner, and talked to Walker H. Barnebey about an increase in advertising rates, telling him that, if he did not sign a new contract to begin February 1, 1930, the date of the expiration of the then existing contract between the parties, the rates would be increased. Barnebey stated that he did not know that he would want advertising six months from that date, but Fitch persisted, and stated that the proposed contract would be held in abeyance until he heard further from defendants, and that the contract would not be binding until defendants gave him further sanction on the agreement. Fitch told Barnebey that there would be a 50 per cent. or greater increase in advertising rates in the next few days, and that he was anxious to get the agreement signed then; that increased rates would go into effect within the next two or three days, and not to exceed two or three weeks; that, if the rates were not increased before February 1, 1930, the agreement would be null and void; that the contract would be held up; and that Fitch would await defendants' sanction before he sent it in to the home office. About the middle of December, 1929, Walter H. Barnebey told Fitch that he did not desire the advertising; that he had notice that there had been no increase or change in the rates, but Fitch again stated that he thought the rates would go up at any time, and finally in December, 1930, Barnebey called Fitch and told him that he absolutely wanted no advertising under the new contract, and directed him to withdraw the advertising cards displayed in the street cars on or before February 1, 1930. On January 16th Barnebey wrote a letter to plaintiff, advising that the advertising was not desired. He received no acknowledgment or communication prior to February 1, 1930, acknowledging the receipt and acceptance of the contract. Defendants did not furnish any advertising cards to plaintiff during 1930, and such of defendants' cards as were displayed during 1930 were old ones. The rates did not go up before February 1, 1930, and there was but a 3 per cent. increase in April, 1930. It may be noted in passing, though not material to the issues, that Mr. Fitch denied having made the representations with reference to the proposed raise in advertising rates, and likewise denied having made any agreement to hold the contract, or that its delivery was conditional.

On their appeal defendants urge that the court erred in directing a verdict for the plaintiff because (1) there was evidence that the contract was delivered conditionally; (2) there was evidence that the agent of plaintiff made false and fraudulent statements to defendants, on which they relied; (3) the court erred in holding that the agent could not bind the plaintiff by representations other than those contained in the contract; (4) the contract price was not the measure of recovery; and (5) the court should have submitted to the jury the question of whether or not the contract was accepted by plaintiff, and whether such acceptance was communicated to the defendants.

The contract contains the following pertinent provisions:

"9. No advertising representative or solicitor shall be regarded as the agent of the Advertising Company.

"10. This contract will not be binding until accepted by the Advertising Company and upon such acceptance the Advertising Company agrees to furnish the above mentioned service on the terms herein stated. This contract cannot be cancelled or amended except by consent in writing, duly executed by both parties hereto.

"11. This contract has been reduced to writing and has been executed first by the Advertiser, and afterwards, in New York, N. Y., by the Advertising Company. It contains all of the agreements and representations of the parties hereto, and no representation or promise not set forth herein shall affect the obligations of either party hereunder."

Conspicuously printed on the contract appears the following:

"Notice To The Person Signing This Contract.

"Read the terms of this contract before signing it, as no statement, settlement, agreement, understanding, or representation, made verbally or written and not inserted herein, will be recognized, and particularly no representation with regard to cancellation of the contract will be recognized."

In our view of the case, we have no occasion to pass upon the contentions so vigorously urged by defendants that they were entitled to prove by parol evidence that the

agent Fitch made representations other than those contained in the contract. The lower court did not exclude any such proffered evidence, nor did it direct a verdict for plaintiff on the ground that such evidence was incompetent. Defendants were dealing with an agent whose authority was very narrowly limited. The contract signed by defendants contains specific provision that it could not be canceled nor amended, except by consent in writing duly executed by both parties; that it contained all the agreements and representations of the parties, "and no representation or promise not set forth herein shall affect the obligations of either party hereunder." In addition to these recitals in the contract, there appears a special paragraph in the nature of a notice which again reiterates the warning that no statement, agreement, representation, or understanding, made either verbally or in writing, will be recognized unless inserted in the contract, and "particularly no representation with regard to the cancellation of the contract will be regarded." Defendants were charged with notice of the lack of authority in Fitch as a representative of plaintiff. They had before them the clear, unmistakable, and reiterated warning that no statement, agreement, understanding, or representation, made verbally or in writing, not inserted in the contract itself, would be recognized or accepted by the plaintiff. Fitch was a mere soliciting agent, barren of all authority to do more than solicit the advertising contract. With knowledge of Fitch's total lack of authority, defendants cannot be heard to say that they relied upon the oral representations, promises, and agreements alleged to have been made by him. New York Life Ins. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355; Jensen v. New York Life Ins. Co. (C. C. A. 8) 59 F.(2d) 957; Inter-Southern Life Ins. Co. v. McElroy (C. C. A. 8) 38 F.(2d) 557; International Harvester Co. v. Rieke (C. C. A. 8) 9 F.(2d) 776, 779; Eastern Advertising Co. v. E. L. Patch Co., 235 Mass. 580, 127 N. E. 516, 517; Colonial Development Co. v. Bragdon, 219 Mass. 170, 106 N. E. 633; Kaley v. Northwestern Mutual Life Ins. Co., 102 Neb. 135, 166 N. W. 256; Omaha Alfalfa Milling Co. v. Pinkham, 105 Neb. 20, 178 N. W. 910; Schuster v. North American Hotel Co., 106 Neb. 672, 184 N. W. 136, 186 N. W. 87; New Prague Flouring Mill Co. v. Hewett Grain & Prov. Co., 226 Mich. 35, 196 N. W. 890; Pease v. Fitzgerald, 31 Cal. App. 727, 161 P. 506; Canon City Industrial Stores Co. v. McInerney, 71 Colo. 492, 208 P. 457; Tockstein v. Pacific Kissel Kar Branch, 33 Cal. App. 262, 164 P. 906;

Gridley v. Tilson, 202 Cal. 748, 262 P. 322; International Text-Book Co. v. Lewis, 130 Mo. App. 158, 108 S. W. 1118; Murphy v. Holliway, 223 Mo. App. 714, 16 S.W.(2d) 107.

Accepting the contention of defendants that the representations and statements made by Fitch were fraudulent and false, yet they were made by one who had no authority to make any statements or representations on behalf of the plaintiff, other than those contained in the contract.

In International Harvester Co. v. Rieke, supra, this court approved an instruction given by the lower court in the following form: "The court instructs you that, if you should find from the evidence that the agents of the defendant made certain false and fraudulent representations to the plaintiff, but that, before he took possession of the truck the so-called 61 truck, he was warned by the officials of the company of the Denver branch that such agents were not authorized to make any such promises or statements, and yet in the face of such information he went ahead, purchased, and took possession of the truck, then the court instructs you that the plaintiff was not deceived and cannot recover, and your verdict should be for the defendant."

Here defendants had actual knowledge of the lack of authority of the agent. They cannot therefore rely upon apparent or ostensible authority; neither can they predicate any right of action upon their act of alleged reliance upon Fitch's authority. They were not innocent parties, and they could not presume that Fitch had authority which they personally knew he did not possess. There was no foundation for such a presumption. Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202.

In Eastern Advertising Co. v. E. L. Patch Co., supra, the Supreme Court of Massachusetts said: "If the plaintiff's agent, acting honestly, intending to keep the promise, agreed that the contract could be canceled by the defendant on thirty days' notice, it is not shown that he had authority to make such an agreement, see Hale v. Mechanics' Mutual Fire Ins. Co., 6 Gray [Mass.] 169, 66 Am. Dec. 410; and by the specific terms of the contract such a parol understanding was of no validity. Even if it were known when the promise was made that it would not be fulfilled and was made for the purpose of deceiving the defendant, the express stipulations of the written contract were to govern, and the plaintiff was not to be held by the parol rep-

resentations of the agent. Colonial Development Corp. v. Bragdon, 219 Mass. 170, 106 N. E. 633, was an action upon a written contract, one of the terms of which was that no agent of the plaintiff had authority to make any representations not contained in the contract. Evidence was offered tending to show that the defendant was induced to sign the contract by reason of false and fraudulent representations of the agent which, apart from the stipulations preventing him from binding the plaintiff, would invalidate any agreement made in reliance upon them. It was held that the defendant could not rely on the statements of the agent and was bound by the agreement as expressed in the written contract. See International Textbook Co. v. Martin, 221 Mass. 1, 7, 108 N. E. 469. In Cannon v. Burrell, 193 Mass. 534, 79 N. E. 780, the written contract stated: 'Separate verbal or written agreements with salesmen are not binding.' The defendant claimed he was induced to enter into the contract by reason of the false representations of the plaintiff's agent. The judge ruled that the question was not open to the defendant or material, in view of the written agreement. It was decided that the defendant entered into the agreement on the basis that the salesman had no authority to change the terms of the written contract by any representation or inducement, and that the ruling of the judge in refusing to pass on the claim of the defendant that he was induced to enter into the contract by reason of the false representation of the salesman, was right."

What has been said with reference to Fitch's alleged representations is equally true with reference to his alleged agreement that the contract should become effective only in the event that the advertising rates were materially increased. The alleged secret agreement between the defendants and Fitch to the effect that this contract should be effective only in the event that it would give defendants an advantage and enable them to secure this service at a rate less than the plaintiff might otherwise have been willing to grant impressed the lower court as a dishonest and collusive agreement, and it impresses us as being dangerously near that zone. We are of the view, however, that Fitch had no authority to make any such agreement, and it was therefore not binding on the plaintiff.

It is also urged by defendants that the contract sued upon was not accepted by plaintiff before notice of cancellation was received from defendants. The testimony on behalf of defendants tended to show that they had not received an acknowledgment of the contract from the plaintiff. The contract itself contains the recital that: "This contract has been reduced to writing and has been executed first by the Advertiser, and afterwards, in New York, N. Y., by the Advertising Company." At the bottom of the contract, above the signatures of the parties, appear the words, "Signed in duplicate," under which appear the words, "Accepted in duplicate July 31, 1929, Barron G. Collier, Inc., J. C. Ramsay, Asst. Sec'y." The contract itself imports its completed execution by the parties thereto. It was, as the instrument itself recites, first executed by the defendants. They signed the contract in Omaha, and it appears from the recitals thereof that at the time they signed it it was in the contemplation of the parties that it should afterwards be signed by the plaintiff in New York. Under these circumstances it was clearly within the contemplation of the parties that the mails should be used as a means of communicating the acceptance of the contract. It appears without dispute that plaintiff accepted the contract in New York, not later than the 3d of August, 1929, before defendants claim to have given any notice of its cancellation. It was accepted in the manner contemplated by the parties, and it appears that the assistant secretary of plaintiff, after indorsing an acceptance on the contract on the 3d of August, 1929, mailed a copy of same to defendants, retaining one copy in the office of plaintiff. There is in evidence a copy of a letter, dated August 3, 1929, addressed to defendants, which states that the contract is inclosed. While it is true that the presumption of the receipt of a letter arising from its being properly addressed, stamped, and posted in the usual course of the mails is a rebuttable one, yet that presumption has no bearing on the issue here, because the question of the receipt of the letter and contract is not material. The circumstances clearly indicating that it was in the contemplation of the parties that the United States mails might be used as a means of communicating acceptance, if that were necessary, the acceptance became complete when the letter, duly addressed and stamped, was deposited in the Unied States mails, so that, if the contract be considered simply as an offer, the offer was clearly accepted when the letter referred to by the witness Ramsay, plaintiff's assistant secretary, was deposited in the United States mails in New York City. This acceptance could not be defeated by proof of its nonreceipt. Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann.

Cas. 362; Shubert Theatrical Co. v. Rath (C. C. A. 2) 271 F. 827, 20 A. L. R. 846; Ellis v. Block, 187 Mass. 408, 73 N. E. 475.

Defendants also complain of the rule of damages adopted by the lower court, contending that it was error to allow plaintiff to recover the contract price. The undisputed evidence showed that the overhead of plaintiff in carrying out its contracts with advertisers did not vary nor diminish in case an advertiser refused to go on with his contract, but the cost of operation was fixed, and the fact that defendants refused the service did not decrease the operating expenses in connection with the display of advertising cards on the street cars, and the cost of operation could not be reduced because of defendants' refusal to go on with the contract; that an effort was made during the balance of 1931 and up to the date of the trial, to sell the space in question, but that plaintiff had been unable to do so, and a witness for plaintiff testified that from his experience it would be impossible to sell all of the unsold space during that period. The facts in this case bring it within the class of cases in which the whole contract price is awarded plaintiff for damages, unless defendants can show some fact to mitigate or diminish the damages. In this class of cases damages are prima facie the contract price, and the burden of proof was on the defendants to show why they should not be accepted as the proper measure of plaintiff's recovery. Lewis v. C. E. Sherin Co. (D. C.) 194 F. 976; In re Silverman (D. C.) 101 F. 219; T. H. Flood & Co. v. Bates (C. C. A. 7) 283 F. 364; Islesworth Hotel Co. v. Ward (C. C. A. 3) 270 F. 86; Ware Bros. Co. v. Cortland C. & C. Co., 210 N. Y. 122, 103 N. E. 890; International Text-Book Co. v. Martin, 92 Neb. 430, 138 N. W. 582; Barron G. Collier, Inc., v. Kindy, 146 Minn. 279, 178 N. W. 584; Barron G. Collier, Inc. v. Domino Macaroni Mfg. Co. (Mo. App.) 248 S. W. 981; Western Grain Co. v. Barron G. Collier, Inc., 163 Ark. 369, 258 S. W. 979, 35 A. L. R. 1534.

On the appeal of defendants we are of the view that no prejudicial error was committed by the lower court, and hence the judgment appealed from should be affirmed, unless, as contended by plaintiff on its cross-appeal, the court erred in not directing the jury to return a verdict on the second cause of action for the full amount demanded in the petition. The court, in directing a verdict for plaintiff, limited the recovery to such damages as had accrued up to the first day of the term of court at which the action was tried. It is urged by defendants that under the laws of Nebraska recovery for the anticipatory breach of a contract is not allowable. It has long been the established doctrine of this court that the question of the measure of damages for the breach of a contract, where not controlled by statute of a state, is one of general law, and that the federal court is not bound by the decisions of the state court upon that question. In Colorado Yule Marble Co. v. Collins (C. C. A. 8) 230 F. 78, a Nebraska contract was involved, and it was claimed that damages for anticipatory breach thereof could not be recovered. This court held, however, that whether Nebraska had a different rule from the federal rule was of no consequence, because the federal court would follow its own rule as to the measure of damages. See, also, Clark v. Belt (C. C. A. 8) 223 F. 573; Bu-Vi-Bar Petroleum Corp. v. Krow (C. C. A. 10) 40 F.(2d) 488, 69 A. L. R. 1295.

It appears that on the 24th of February, 1931, defendants unequivocally breached the contract by refusing to perform. In Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953, the Supreme Court held that, where there was an unqualified and positive refusal to perform a contract, though performance were not yet due, the contract might, if the renunciation went to the whole contract, be treated as a complete breach, which would entitle the party not in default to bring his suit at once. To the same effect see Central Trust Co. v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. In Colorado Yule Marble Co. v. Collins, supra, this court followed the doctrine of the Roehm Case, and held that the rule was applicable to partly executed contracts as well as to those wholly executory. The lower court was in error in not applying the federal rule as to damages.

Defendants urge that the lower court was without jurisdiction because the necessary amount was not involved, basing this contention upon the fact that the lower court held as a matter of law that plaintiff was not entitled to recover for an anticipatory breach of the contract. We have already referred to that question, but, even had the court not been in error on the rule of damages applicable, still the lower court would have had jurisdiction because the amount for jurisdictional purposes is determined by the amount in good faith claimed in the petition. That was the amount in dispute, and the jurisdic-

tion of the court, having once attached, will not be defeated, even though it subsequently transpires that plaintiff was not entitled to recover the full amount claimed.

█ We are urged by plaintiff to remand the case, with directions to enter judgment for the full amount claimed. The judgment in favor of plaintiff as to the first cause of action must be permitted to stand, while the judgment as to the second cause of action must be modified. The Seventh Amendment to the Constitution provides that: "In suits at·common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." In the instant case the court held, and we have approved its holding in that regard, that plaintiff, on the undisputed evidence, was entitled to recover. There were no disputed questions of fact to submit to the jury, and the only error committed was one of law. Questions of law are, of course, not submitted to a jury. The parties have had their day in court, and there are no issues of fact to submit to a jury. In this state of the record, we are of the view that the cause should be remanded to the court below with directions to modify its judgment as to the second cause of action, by allowing plaintiff the full contract price as its measure of damages. Gasoline Products Co. v. Champlin Refining Co., 283 U. S. 494, 51 S. Ct. 513, 514, 75 L. Ed. 1188; New Orleans Ins. Ass'n v. Piaggio, 16 Wall. 378, 21 L. Ed. 358; Ft. Scott v. Hickman, 112 U. S. 150, 5 S. Ct. 56, 28 L. Ed. 636; Bayne v. United States (C. C. A. 8) 195 F. 236; May Dept. Stores Co. v. Bell (C. C. A. 8) 61 F.(2d) 830; 28 USCA § 877.

A verdict directed by the court is simply a matter of form, and as said by the Supreme Court in Gasoline Products Co. v. Champlin Refining Co., supra: "All of vital significance in trial by jury is that issues of fact be submitted for determination with such instructions and guidance by the court as will afford opportunity for that consideration by the jury which was secured by the rules governing trials at common law. See Herron v. Southern Pacific Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857. Beyond this, the Seventh Amendment does not exact the retention of old forms of procedure. See Walker v. New Mexico & Southern Pacific R. Co., 165 U. S. 593, 596, 17 S. Ct. 421, 41 L. Ed. 837. It does not prohibit the introduction of new. methods for ascertaining what facts are in

issue (see Ex parte Peterson, 253 U. S. 300, 309, 40 S. Ct. 543, 64 L. Ed. 919), or require that an issue once correctly determined, in accordance with the constitutional command, be tried a second time even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury."

It is common practice even in a criminal case, where, on trial before a jury, defendant has been convicted, but the court has imposed an erroneous sentence, to remand the cause to the lower court with directions to enter a proper judgment without requiring a new trial. To hold in the instant case that a new trial must be granted where only questions of law are involved, and where the only error committed was an error of law in directing the jury as to the amount of damage which plaintiff was entitled under the undisputed evidence to recover, would be to sacrifice substance to ancient form. If form is to be regarded as sacred, we should direct the lower court to impanel a jury, and then instruct the jury so impaneled, upon the record as it now stands, to return a verdict for plaintiff for the full contract price. This would surely be an idle ceremony.

The cause is therefore remanded to the lower court, with directions to modify the judgment in accordance herewith, and, as so modified, it will stand affirmed.