## DAVIS *v*. BISHOP.

### Opinion delivered June 23, 1919.

SALE—GROWING CROP—DROUGHT.—Where the defendant agreed to sell to the plaintiffs at a price named 300 bales of cotton which were growing on defendant's farm, and by reason of drought the defendant raised only 219 bales, whereas he usually raised five hundred bales, plaintiff cannot recover damages for non-delivery of the remainder of the bales to be sold.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; affirmed.

*John N. Cook,* for appellants; *Mahaffey, Keeny & Dalby* (of Texas), of counsel.

The court erred in giving instruction No. 1 directing a verdict. Even if the complaint alleged unequivocally and the proof showed that the cotton called for in the contract was to be raised by appellee and this crop fell short the 81 bales, this would not relieve him from damages in the event the market price of the cotton exceeded the price mentioned in the contract. 6 R. C. L. 1001, § 367; 15 L. R. A. (N. S.) 833; L. R. A. 1917 A. 648; *Ib.* 1916 F. 3; *Ib.* 1917 C. 437.

Appellee made no effort to show why he failed to raise the 300 bales, further than to say he only made 219. 13 C. J., § 873 *et seq.* and 958.

The issue should have been submitted to a jury. 4 Crawford's Digest, p. 4966.

*Pratt P. Bacon,* for appellee; *Wheeler & Robinson* (of Texas), of counsel.

The court properly instructed a verdict, the failure to deliver was caused by the act of God and without any fault on the part of the seller. 75 S. W. 341; 53 L. R. A. (old ser.) 681; 83 Ala. 440; 35 *Id.* 169; 31 Ark. 286; 16 Cyc. 847; 74 Ala. 311; 39 Ill. 372. Appellee tendered the proceeds of all the cotton he raised under the contract, and the verdict is right, and the judgment should be affirmed.

HART, J.   Geo. W. Davis & Company sued G. W. Bishop to recover damages which they alleged they sustained by reason of the breach of a contract by Bishop to sell and deliver to them a certain number of bales of cotton.

At the conclusion of the evidence, the court directed the jury to. return a verdict in favor of the defendant, and from the judgment rendered the plaintiffs have duly prosecuted an appeal to this court.

The only issue raised by the appeal is whether or not the trial court erred in directing a verdict for the defendant under the evidence adduced by the plaintiffs. Hence it will only be necessary to abstract the testimony of the plaintiffs.

C. G. Davis & Company is a firm of cotton buyers at Texarkana, Texas, and have been engaged in that business for several years.   C. W. Bishop owned a large cotton plantation in Miller County, Arkansas, and usually planted about one thousand acres in cotton. About the 1st of August, 1917, C. G. Davis, the senior member of the firm, and G. W. Bishop had a conversation about the advisability of the latter selling at that time a part of the cotton which was being grown on his plantation during that year.   They agreed that it would be a good thing for Bishop to do this.   Bishop told Davis that he had one thousand acres in cotton and usually made five or six hundred bales.  On the 1st day of August, 1917, they entered into a contract for the sale by Bishop to C. G. Davis & Company of three hundred bales of the cotton at 24½ cents a pound.   The cotton was already growing on Bishop's farm in Miller County. Arkansas. and was to be delivered at Texarkana, Texas, during the months of October, November and December of that year.

In contracts of that kind it was the custom for the planter to deliver the number of bales sold out of the first cotton picked by him. During the fall, Bishop picked two hundred and nineteen bales of cotton on his farm and delivered the same to C. G. Davis & Company, who paid him the contract price therefor.   Bishop failed to de-

liver to Davis & Company any more cotton, and they brought this suit in order to recover damages which they allege they sustained on account of his failure to deliver to them any more cotton. It was shown by Bishop that he delivered to them all the cotton that he grew on his farm in Miller County, Arkansas, during that year.

The court did not err in directing a verdict for the defendant. It is true, as contended by counsel for the plaintiffs, that the general rule is that when the contract is to do a thing which in itself is possible, the promisor will be liable for a breach thereof, notwithstanding it was beyond his power to perform it. The reason is that it was his own fault to run the risk of undertaking to perform an impossibility, when he might have provided against it by his contract. There are, however, well-known exceptions to this general rule, and one of them is that where from the contract it is apparent that the parties contracted on the basis of the continued existence of a given thing, a condition is implied that, if the performance became impossible from the perishing of the thing, that shall excuse the performance.

In the instant case, according to the evidence adduced by the plaintiffs, the defendant agreed to sell to the plaintiffs three hundred bales of cotton which were growing on his farm in Miller County, Arkansas. The contract was executed on the 1st day of August. The defendant had planted one thousand acres in cotton, and that number of acres usually made five or six hundred bales of cotton. The contract related to the crop to be grown by the defendant on the latter's farm in Miller County. Under these circumstances, the performance of it, in the contemplation of both parties, depended upon the future growth and continued existence of the cotton.

The defendant delivered to the plaintiffs all the cotton that grew on the farm, and he was therefore excused from a further performance of the contract.

According to the plaintiff's own testimony, it was the intention of the defendant to sell him a part of the crop which was growing on his plantation in Miller County, and under the circumstances the designation of three hundred bales was a mere statement of opinion as to the quantity and cannot be regarded as a warranty that the defendant would raise that number of bales. Of course, if the defendant, by the terms of the contract, had warranted that he would raise three hundred bales of cotton, he would be bound by the terms of his warranty, notwithstanding, on account of weather conditions or other matters over which he had no control, he failed to raise the designated number of bales. Here we have already seen, it appears from the plaintiffs' testimony that it was the intention of the parties that the cotton should be grown on the defendant's own farm, and it is plain that the number of bales was specified in the contract for the purpose of limiting the quantity sold to that amount. *Switzer* v. *Pin Conning Mfg. Co.,* 59 Mich. 488; *Rice & Co.* v. *Weber,* 48 Ill. App. 573, and *Ontario Deciduous Fruit Growers' Association* v. *Cutting Fruit Packing Co.* (Cal.), 53 L. R. A. 681.

In the last-mentioned case the court held that, under a contract for the sale of the crop of a certain orchard, stating the minimum quantity of the fruit to be delivered, the seller cannot be held liable in damages for failure to deliver the specified quantity because of the failure of the crop due to unusual climatic conditions; nor can he be compelled to substitute other fruit for that contemplated in the contract.

In a case note to L. R. A. 1916F, at p. 63, in discussing the question of intervening impossibility of performance of a contract as a defense to an action for the breach thereof, it is said:

"Whether or not a contract for the sale of produce to be delivered at a certain future date contemplates that it shall be grown on a particular tract of land, so that a failure of the crop on that land will excuse non-delivery, is often a close question of construction of the particular

contract. The rule appears to be that if the parties contemplate a sale of the crop, or of a certain part of the crop, of a particular tract of land, and, by reason of a drought, or other fortuitous event, without the fault of the promisor, the crop on that land fails or is destroyed, non-performance is to that extent excused; the contract, in the absence of an express provision controlling the matter, being subject to an implied condition in this regard; but that, if the contract does not specify or contemplate the crop of any particular tract of land, non-performance will not be excused merely because it happens that, on account of a drought or other fortuitous event, without his fault, the promisor is unable to perform the contract, the cases following in this respect the general rule previously indicated that the mere inability of the obligor to perform will not generally excuse non-performance.''

It follows that the judgment must be affirmed.