BUTTERWORTH *v.* TELLIER.

Opinion delivered March 14, 1932.

*Frauenthal, Sherrill & Johnson,* for appellant.

*June P. Wooten,* for appellee.

HART, C. J., (after stating the facts). Counsel for appellee seek to uphold the construction placed upon the contract by the court under the rule that, when a man undertakes by an express contract to do a given act, he is not absolved from liability for nonperformance, even though he is prevented from doing it by an act of God or some impossibility placing it beyond his power to perform the contract. Among the many cases following this rule are *Cassady* v. *Clarke,* 7 Ark. 123; and *Davis* v. *Bishop,* 139 Ark. 273, 213 S. W. 744. In the latter case, the court also recognized certain exceptions to the general rule, and one of them is that where the subject-matter of the contract has been destroyed or the event creating the impossibility is one which could not reasonably be supposed to have been within the contemplation of the contracting parties, the promisor is discharged from the performance of the contract or the obligation to answer in damages.

Again in *Holton* v. *Cook,* 181 Ark. 806, 27 S. W. (2d) 1017, 69 A. L. R. 709, the court recognized that contracts of this character must be considered as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible without fault of the contractor.

Numerous other cases applying the rule and the exceptions thereto may be found in a case note to 21 A. L. R. commencing at 1274, and in 74 A. L. R., commencing at 1290. No useful purpose could be served by an extended review of the decisions because, to determine whether a case falls within the general rule or the exceptions thereto, reference must be made to the facts of each particular case.

It is earnestly insisted by counsel for appellee that in all of these cases the court has recognized that the death of the person or destruction of the subject-matter of the contract has rendered the performance of the

contract a physical impossibility. We do not agree with counsel in this contention. Since the question is one as to the construction of the contract, it can make but little difference how the subject-matter of the contract went out of existence, so long as the party charged was not in any degree in fault in the premises. The minds of the parties are presumed to have contemplated the possible loss of the property. For cases illustrating the principle, see *Dexter* v. *Norton,* 47 N. Y. 62, 7 Am. Rep. 415; and *Lorillard* v. *Clyde,* 142 N. Y. 456, 24 L. R. A. 113, 37 N. E. 489.

In the latter case, there was a guaranty of dividends of the corporation for a term of years made by the manager to persons who were formerly his competitors in business, which the corporation had been formed to continue under what was substantially a partnership arrangement, while both parties were prohibited from becoming interested in competing business during that period, which the court held implied the existence of the corporation during the time specified, capable of earning and declaring dividends. In that case it was also held that a defense to a guaranty of corporate dividends that the corporation had been dissolved would not be defeated on the ground that the dissolution was caused by the defendant's own misconduct, where it was adjudged on the application of the plaintiff for technical breach of corporate duty, for some of which he was as much responsible as the defendant.

We have set out the contract, which is the basis of this lawsuit, in our statement of facts, and need not repeat it here. Reference to it will show that Miller and Butterworth were owners of the majority of the stock in the corporation. Tellier first subscribed for $5,000 worth of the stock and then increased it to $15,000. Miller and Butterworth were original subscribers of stock for $25,000 each. The contract recites that in consideration of the purchase of said stock by Tellier and the personal advantage accruing to Butterworth and Miller as

majority stockholders, it was agreed by the parties that Tellier should receive dividends on said stock at the rate of ten per cent., and that he should continue to receive them until such time as the corporation was in a position to declare regular dividends out of its earnings. It then provides that said stock shall be credited with the payment of said dividends and shall draw dividends the same as all other stock at such times as regular dividends shall be declared. It then provides that Miller and Butterworth shall guaranty said ten per cent. dividends, payable as above stated, and for the further consideration enumerated. Miller, Butterworth and Tellier were all intimate friends and closely associated with each other in business. Miller and Butterworth were the managing officers of the corporation. Just what relation Dickinson had is not shown.

A reasonable construction of the contract shows that there was an implied condition that the dividends to be paid on the stock of Tellier were to be made by Miller and Butterworth as managing officers of the corporation, and were to continue only so long as the corporation continued in existence, and was not dissolved on account of the neglect or mismanagement of its affairs by Miller and Butterworth. The record does not show that any act of Miller or Butterworth caused the insolvency of the corporation. It was organized at a time when the business affairs of the country were in good condition, and it was thought in good faith by all of the parties that great profits would be made in the operation of the granite quarry. The parties had made large profits in other transactions. Like many other businesses, the corporation lost instead of making money. This resulted finally in its insolvency, and its assets were sold to pay the creditors of the corporation. As above stated, there is nothing to show that Miller and Butterworth were at fault in the management of the corporation and caused its insolvency by any act of neglect of their own in the management of the corporation.

In this connection, it may be stated that Tellier received the price of his subscription to the last stock and a little more besides. Even after the death of Miller, Butterworth continued to make payments for a time, and this was after the corporation ceased to exist. This at least showed good faith in the premises.

Upon a consideration of the whole case, we are of the opinion that there was no liability under the contract, and the court erred in directing a verdict for the plaintiff. Inasmuch as the case seems to have been fully developed, the judgment will be reversed, and the cause of action will be dismissed here.