PETE SMITH COMPANY, Inc. *v.*
CITY of EL DORADO, Arkansas

75-137                                          529 S.W. 2d 147

Opinion delivered November 10, 1975

*Plegge, Lowe & Whitmore,* for appellant.

*J. V. Spencer, III,* City Atty., for appellee.

CONLEY BYRD, Justice. The appellant Pete Smith Company, Inc., contracted with the appellee, City of El Dorado, Arkansas, to construct an 18-hole golf course for $230,329.88. After appellant had performed all of the clearing and dirt work in accordance with the contract specification, a torrential rainfall of 12.47 inches occurred in a 10 hour period. Substantial erosion resulted from this rainfall. The undisputed testimony is that it will cost in excess of $60,000 to restore the golf course to its condition prior to the rain. Appellant, by way of a declaratory judgment, sought relief under the doctrine of "Commercial Frustration." The trial court denied relief. Appellant appeals raising only the issue of Commercial Frustration.

The commercial frustration doctrine is set forth in *Restatement of Contracts* § 288 (1932), as follows:

"Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears."

The Restatement wording of the doctrine is criticized by Corbin, see 6 *Corbin on Contracts* § 1323 n. 19 (1962).

Judge Riddick stated the doctrine, in *Pacific Trading Co. v. Mouton Rice Milling Co.*, 184 F. 2d 141 (8th Cir. 1950), as follows:

"Under the doctrine of frustration as relieving a party from its contractual obligations, performance remains possible but is excused whenever an event not due to the fault of either party supervenes to cause a failure of consideration or destruction of the expected value of performance. . . . "

Also, the doctrine is recognized between buyers and sellers of goods under the Uniform Commercial Code, Ark. Stat. Ann. § 85-2-615 (Add'n 1961).

6 *Corbin on Contracts* § 1361 points out that a partial frustration by subsequent events is less likely to be held to discharge a contractor from duty than is total frustration. In the cases upon which appellant relies — *i.e. Butterworth* v. *Tellier*, 185 Ark. 357, 47 S.W. 2d 593 (1932) — there was a total frustration.

The contract before us here provides:

"Section 1, INSTRUCTIONS TO BIDDERS, § 1-02, *Local Conditions:* Bidders shall *read* and *examine* the Specifications and Plans, and make their own estimates

of the existing facilities and difficulties which will attend the execution of the work called for by these Contract Documents, the Specifications and the Plans, including local conditions, uncertainty of the weather, and all other contingencies. Bidders shall satisfy themselves by personal examination of the location of the proposed work, and by such means as they may choose, as to actual conditions and requirements. Information derived from the Plans and Specifications or from the Engineer or his assistants shall not relieve the bidder of this responsibility.

Section 2, GENERAL CONDITIONS OF THE SPECIFICATIONS, § 2-06, *The Contractor:* It is understood and agreed that the Contractor has, by careful examination satisfied himself as to the nature and location of the work, the information of the ground, the character, quality and quantity of the materials to be encountered [in] prosecution of the work, the general location conditions, and all other matters which can in any way affect the work under this Contract. No verbal agreement or conversation with any office, agent or employee of the Contracting Authority, either before or after the executing of this contract shall affect or modify any of the terms or obligations herein contained.

Section 2, GENERAL CONDITIONS OF THE SPECIFICATIONS, § 2-13, *Protection of Work and Property:* The Contractor shall continuously maintain adequate protection of all his work from damage and shall protect the Contracting Authority's property from injury or loss arising in connection with the Contract. We shall make good any damage, injury, or loss, except such as may be directly due to errors in the Contract Documents or caused by agents or employees of the Contracting Authority. He shall adequately protect adjacent property as provided by law and the Contract Documents. He shall provide and maintain all passageways, guard fences, lights, or other facilities for the protection required by public authority of local conditions."

Thus, from the foregoing it follows that the chancellor did not err in denying appellant relief under the commercial frustration doctrine whether such denial be placed upon the theory that the contract expressed a contrary intent or the theory that the doctrine is not applicable in the event of only a partial frustration that only increases the cost of performance.

Affirmed.