**UNITED STATES of America,**

v.

**3,035.73 ACRES OF LAND, MORE OR LESS SITUATED IN MONROE COUNTY, STATE OF ARKANSAS, and**

**S. Norris BROADHEAD, personally as co-executor of the Sam Broadhead Estate and as Trustee for Sam Broadhead Trust, Paul E. Broadhead a/k/a Paul Elzie Broadhead, personally as co-executor of the Sam Broadhead Estate as Trustee for the Sam Broadhead Trust and as Trustee for the Paul E. Broadhead Trust, Martha P. Broadhead, Sherry Broadhead, C. Dennis Goldman a/k/a Dennis Goldman as Trustee for Paul E. Broadhead Trust, and unknown owners, Appellants,**

v.

**TUPELO TIMBER, INC., Appellee.**

**No. 80–1620.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1981.

Decided June 12, 1981.

James Bruce McMath, McMath & Leatherman, Little Rock, Ark., for appellant.

E. Harley Cox, Jr., Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for appellee.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

The United States filed this action to condemn 3,035.73 acres of land in Arkansas for use as a fish and wildlife habitat. The lands are heavily forested in hardwood and wetland timber. S. Norris Broadhead, Paul E. Broadhead and the Estate of Sam E. Broadhead (Broadheads) were the fee owners of all except a small portion of the land. Prior to the condemnation, the Broadheads had entered into an arrangement with Tupelo Timber, Inc. (Tupelo) entitled "Option to Purchase Standing Timber." Tupelo contended that the instrument conveyed an interest in the lands condemned entitling it to compensation for the taking of the lands and timber. The district court[1] awarded Tupelo $60,000 on its claim. We affirm.

By complaint and Order of Possession filed November 11, 1977, the United States commenced an action to acquire title to the 3,035.73 acres of land in Monroe County, Arkansas. The Broadheads, owners of the land, answered the complaint as did Tupelo which claimed it had a compensable interest by virtue of an option to purchase timber granted by the Broadheads.

On March 5, 1979, the Broadheads filed a motion seeking a declaration from the court that the option held by Tupelo did not represent a compensable interest. On September 10, 1979, the district court held that Tupelo had a compensable interest. On June 9, 1980, after the case was tried to the court, the district court filed an opinion awarding Tupelo $60,000. *United States v. 3,035.73 Acres of Land*, 496 F.Supp. 1026 (E.D.Ark.1980). Pursuant to an agreement between the United States and the Broadheads, any amount awarded to Tupelo would be paid from the just compensation in the sum of $1,062,000.00 paid to the Broadheads by the United States. *Id.* at 1027.

The Broadheads have appealed the district court's finding, claiming the option was not an estate or interest in land that would be compensable. The contract provided that the Broadheads

* * * give and grant unto Tupelo * * * the right, privilege and option to purchase all or any part of the standing timber situate * * * on the lands * * * up to a total of 4,000,000 board feet * * * at a price of $50.00 per thousand feet * * for a period of three years beginning August 1, 1977 and ending July 31, 1980.

■ In examining the Broadheads' appeal, we note that while the federal courts

---

1. The Honorable Oren Harris, Senior United States Judge for the Eastern District of Arkansas, presiding.

are not bound by state law in a case such as this one, we will look to state law for aid in determining what property interests are compensable. *United States v. 967,905 Acres of Land*, 447 F.2d 764, 768–69 (8th Cir. 1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1193, 31 L.Ed.2d 248 (1972); *Nebraska v. United States*, 164 F.2d 866, 867–68 (8th Cir. 1947), *cert. denied*, 334 U.S. 815, 68 S.Ct. 1070, 92 L.Ed. 1745 (1948); *see Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 305–11, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976). In addition, we will not reverse the district court's findings unless they are found to be clearly erroneous or the court failed to correctly apply the applicable law. *United States v. 1,162.65 Acres of Land*, 498 F.2d 1298, 1302 (8th Cir. 1974).

■ The district court, in holding that Tupelo had an estate or interest in land compensable in a condemnation action, stated as follows:

The Court * * * finds and concludes that, as between Tupelo and the Broadheads there existed at the time of the filing of the condemnation action herein a valid agreement as to the lands condemned under which Tupelo had the right to cut and remove up to 4,000,000 board feet of standing timber and to pay for such timber, as it was cut and removed, a price of $50 per thousand board feet. * *

By reason of the taking by the United States, Tupelo has been deprived of the right, pursuant to the Option, to enter on the lands and cut and remove the timber standing thereon. If the instrument entitled "Option" did grant to Tupelo an equitable or legal title to the standing timber, that would constitute an interest in real property under the laws of the State of Arkansas, and would entitle Tupelo to an award of just compensation in this proceeding.

Under the law of the State of Arkansas it is well settled that a deed to growing or standing timber authorizing the grantee to cut and remove the trees within a specified time is a conveyance of an interest in real property, creating a new and separate estate in the grantee. See *Henry Quellmalz Lumber & Mfg. Co. v. Roche*, 145 Ark. 38, 223 S.W. 376 (1920). It has been held that in order to convey legal title to timber in place it is absolutely necessary that the conveyance contain words expressing transfer of title, such as "grant, bargain and sell" or words of similar import. *Griffith v. Ayer-Lord Tie Co.*, 109 Ark. 223, 159 S.W. 218 (1913). However, [in] a more recent case, *Schnitt v. McKellar*, 244 Ark. 377, 427 S.W.2d 202 (1968), the Arkansas Supreme Court held that a deed or any other contract must be examined to determine the intent of the parties, and that the terms of the instrument, not its name, determine its character.

\* \* \* \* \* \*

In examining the "Option" of Tupelo, it is apparent that a present right is conveyed by the Broadheads to Tupelo to enter upon the lands described, with rights of ingress and egress, and to cut and remove the timber standing in place on the lands described in the exhibit to the agreement. * * *

The Court does not perceive any real or substantial difference between the rights which are conferred by a timber deed and the rights conferred upon Tupelo by the "Option." Only the form and wording are different. In substance, Tupelo had under the agreement with the Broadheads every right that the holder of title to standing timber would have had under a deed. No further act on the part of the Broadheads was necessary or contemplated to vest these rights to the standing timber in Tupelo. The Broadheads warranted title to the timber, and agreed to hold Tupelo harmless from claims or demands of others to ownership.

From an examination of the "Option", the Court can only conclude that under the applicable laws of the State of Arkansas Tupelo was, at the time the complaint in condemnation was filed, the owner of an interest in the lands condemned which was of such a nature and character as to entitle Tupelo to payment of just compensation for its taking.

*United States v. 3,035.73 Acres of Land*, 496 F.Supp. 1026 at p. 1028, 1030–31 (E.D.Ark. Sept. 10, 1979). We find no error in the district court's holding.

Broadheads urge that the "option does not create a compensable interest in the lands" and the court erred in light of *United States v. 677.50 Acres of Land*, 420 F.2d 1136 (10th Cir.), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 90 (1970) and *United States v. 1,070 Acres of Land*, 52 F.Supp. 378 (M.D.Ga.1943). However, these cases are not persuasive. In *United States v. 677.50 Acres of Land, supra*, 420 F.2d at 1138–39, the Tenth Circuit held that the agreements to purchase oil by an oil company were not an estate in land under Kansas law because they dealt only with the purchase of oil after it had been pumped. Not only is that case distinguishable from the present case because the Tenth Circuit was interpreting Kansas law and we are faced with Arkansas law, but the nature of the interests involved is much different. The present case gives the grantee a present right to enter the land, exercise ownership rights over specified timber, cut the timber, and remove it. Also, *United States v. 1,070 Acres of Land, supra*, 52 F.Supp. at 378, does not persuade us that the district court's interpretation of Arkansas law was erroneous, because that case involved a determination of Georgia mineral rights law. Aside from the fact that we are faced with Arkansas, not Georgia law, the present case is distinguishable from the Georgia case because we are faced with a contract that specifically describes a particular property and provides with some certainty a measurement of the item that is to be removed from the property.

We are satisfied that the district court correctly held that Tupelo had a compensable interest in the land condemned and was entitled to payment of just compensation for its taking. *See generally, Alamo Land & Cattle Co. v. Arizona, supra*, 424 U.S. at 303–04, 96 S.Ct. at 916–17.[2]

Affirmed.

2. We also note, as did the district court, that the Broadheads had agreed to indemnify Tupe-

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. In my opinion the agreement between the Broadheads and Tupelo Timber, Inc. was a bare option contract to purchase standing timber and not a timber deed.

Further, even assuming for the purposes of argument that this agreement was more than an option contract and the substantial equivalent of a timber deed, I do not agree that Tupelo was the owner of a compensable interest in property by virtue of this agreement.

I do not dispute that under pre-Uniform Commercial Code (UCC) Arkansas law a deed to growing trees or standing timber authorizing the grantee to cut and remove the trees within a specified time was a conveyance of an interest in real property, *e. g., Henry Quellmalz Lumber & Manufacturing Co. v. Roche*, 145 Ark. 38, 223 S.W. 376, 377 (1920). However, the UCC as amended and adopted by Arkansas, Ark. Stat.Ann. § 85–2–107 (Cum.Supp.1979) (effective Jan. 1, 1974), is applicable to timber sales. *See Davis v. Kolb*, 263 Ark. 158, 563 S.W.2d 438, 439 (1978). Section 85–2–107(2) provides in part:

> A contract for the sale apart from the land . . . of timber to be cut, is a contract for the sale of goods within this Article [chapter], whether the subject matter is to be severed by the buyer or by the seller, even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance.

Thus, under § 85–2–107(2) a contract for the sale of timber to be cut, like the agreement in the present case, is a contract for the sale of goods rather than a conveyance of an interest in real property.

In my view Tupelo had at most a contract and a claim that the United States in condemning this land for a wildlife reserve had

lo against adverse title claims to the timber.

taken its contract. Valid contracts are property which is protected by the fifth amendment. *E. g., Lynch v. United States,* 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434 (1934). However, this argument confuses the contract with its subject matter. The United States condemned the land, including the standing timber; the United States did not take the contract. Therefore, I think this case is controlled by *United States v. 677.50 Acres of Land,* 420 F.2d 1136 (10th Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 90 (1970). *See also Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923); 4 Nichols on Eminent Domain § 13.33, at 13–237, 239–41 (3d rev. ed. J. Sackmän 1980).

In *United States v. 677.50 Acres of Land,* the United States condemned certain lands subject to division order contracts relating to the transport of oil through pipelines from wells on the land to gathering stations. Upon completion of the project for which the land was condemned, the claimant would have been unable to use its pipelines to purchase, gather or transport oil from the land. The court held that the claimant did not have a compensable interest in the land taken by virtue of the division order contracts and that the contracts had not been taken by the condemnation, only frustrated. 420 F.2d at 1138. Here, the United States in taking the land, including the standing timber, by eminent domain necessarily frustrated Tupelo's contract rights in the standing timber. However, such an effect was merely incidental to the taking of the land. I would find that Tupelo did not have a compensable interest.[1]

---

1. Tupelo arguably has an action for breach of contract against the Broadheads, although their defense would probably be based on commercial frustration, *see* Ark.Stat.Ann. § 85–2–615 (1961) (Excuse by failure of presupposed conditions); *Pete Smith Co. v. City of El Dorado,* 258 Ark. 862, 529 S.W.2d 147 (1975).